JAMES L. JACKSON & another *vs.* AARON H. ALLEN.

Suffolk.   March 17, 1874. — Sept. 3, 1875.   COLT & ENDICOTT, JJ., absent.

Nov. 20, 1875. — March 7, 1876.   MORTON & LORD, JJ., absent.

The extent of an invention claimed in letters patent is to be determined by the specification, which is to be construed by the court; and testimony of experts that, at the time the letters were issued, the invention, as described and claimed therein, was not novel, is inadmissible to control or limit the construction to be given to the specification.

The description of an invention claimed in letters patent was " a seat, moving upon a cross shaft or hinge in such manner as that the seat or front sitting portion thereof can be turned up or elevated to afford room in passing into or out of the seat or past it, and said seat forming a lever that, when down or adjusted to a sitting level, strikes and is supported by a stop, which may be located in rear of the seat fulcrum, and serves to sustain the seat and person occupying the same, the seat being extended backwards in rear of its fulcrum and coming up under said stop." The specific claim was for " a swinging or lever seat, set and moving upon a cross shaft or hinges, and sustained when in use by a stop or stops so disposed as that the rear portion of the seat comes in contact with said stop or stops when the seat is turned down, substantially as herein set forth ; and whether combined or not with weights or springs whereby the said seat may assume and retain a vertical or raised position automatically, as herein specified." *Held*, that this patent was for a tilting seat, suspended upon a pivot back of the centre, and sustained as a lever under the weight of the sitter by a stop or stops bearing downwards at the back of the seat or in rear of the pivot, thus dispensing with supports in front of the fulcrum ; that it was not limited to the particular form and position of the several parts by which this was effected as shown in the specification ; but that if in another chair the like results were accomplished in substantially the same manner, the latter was an infringement, notwithstanding differences in the form, appearance and arrangement of the parts.

**An** invention embracing as an essential part of its device one for which a former patent has been issued, is not less an infringement thereof by reason of its containing something additional, itself patentable as an improvement.

Whether a patented invention is or is not an infringement of a prior patent is a question of fact for the jury.

A patentee of a chair granted the exclusive right to make and sell the chair within the United States, and covenanted not to grant a license to any other person to make or sell chairs of the kind. He subsequently made an agreement under seal with a third person, the later patentee of another chair, reciting that a suit which had been brought by a former licensee under the first patent against the later patentee, for an infringement of the former patent, had terminated in favor of the later patentee and had been dismissed because it was held that the chair made by him was not deemed an infringement of the earlier patent, and agreeing for a money consideration to abide the decision in the said cause and to make no claim against the later patentee on account of any chair made or to be made under his patent. The suit referred to had in fact been dismissed by an arrangement of the parties thereto. *Held,* that if the chair of the later patentee was in fact an infringement of the earlier patent, the agreement with him was in substance a license, and constituted a breach of the covenant in the earlier agreement; and that after the execution of the contract with the later patentee neither the earlier patentee nor his first licensee could maintain any proceedings against the later patentee for making the chair patented by him on the ground of infringement of the earlier patent.

A patentee, reciting the issue of his letters patent, but not describing himself as the inventor of the improvement, granted an exclusive license to make and sell the same "as patented under and by said letters patent," and covenanted not to grant licenses to any other person to make and sell articles of the same character, and also to institute or cause to be instituted legal proceedings against all parties who might infringe said letters patent, and to exercise due diligence in such proceedings so as to restrain such parties as promptly as possible, in order that the licensee might enjoy the exclusive privilege of making and selling the articles in question without competition. *Held,* that this agreement did not amount to a warranty that the licensee should enjoy the privilege against persons not claiming rights under the licensor; nor estop the licensor to show that his patent was invalid, by way of affecting the damages in an action against him by the licensee for breach of the covenants to sue infringers and not to grant other licenses.

CONTRACT upon the following indenture, dated March 23, 1869, and signed by the plaintiffs and the defendant:

" Whereas certain letters patent of the United States, bearing date the 5th day of December, 1854, were issued to A. H. Allen, of Boston in the county of Suffolk and State of Massachusetts, for improvements in chairs for theatres, school-houses and dwelling houses, which said letters patent were afterwards surrendered, and new and reissued letters patent for the same invention granted to the said Aaron H. Allen on the 15th day of January, 1861, which reissued letters patent were extended for

the term of seven years from the 5th day of December, 1868 and whereas James L. Jackson and Peter H. Jackson, composing the firm of James L. Jackson & Brother, of the city and State of New York, are desirous of obtaining a license to use the improvement so patented to the said Allen in and upon chairs for theatres and other buildings, to be manufactured and sold by them, the said James L. Jackson & Brother, excepting only folding portable chairs of the character and such as is commonly known as camp stools or chairs, and those now known as school furniture seats:

"Now this indenture witnesseth, that the said Aaron H. Allen, for and in consideration of the sum of one dollar to him in hand paid by the said James L. Jackson and Peter H. Jackson, composing the firm of Jas. L. Jackson & Brother, the receipt whereof is hereby acknowledged, and of the covenants hereinafter recited to be kept and performed by the said James L. Jackson & Brother, has given and granted, and by these presents does give and grant, unto the said James L. Jackson & Brother the exclusive liberty, license, power and authority to make, use and sell within and for the United States, for and during the unexpired term of said patent, the said improvement as patented under and by said letters patent, excepting only the adaptation of said improvements to camp chairs and school furniture as hereinbefore recited, upon the terms and conditions herein contained, and upon the payment of the sums of money as herein provided.

"1st. The said James L. Jackson & Brother covenant and agree to pay to the said Aaron H. Allen the following sums upon all chairs manufactured and sold by them, containing and using said improvements or any substantial part thereof, as follows, that is to say, upon each and every such chair the sum of thirty-five cents.

"2d. The said James L. Jackson & Brother also covenant and agree to keep full and correct books of account of any and all said chairs which they may manufacture containing or using the said invention, which said books of account shall be open at all reasonable times to the inspection of said Aaron H. Al'en and his representatives, or his or their attorney; and on the first days of January, April, July and October of each and every

year to make a true return of all such chairs manufactured and sold by them as herein authorized during the past quarter, and also remaining unsold, and within thirty days thereafter to pay to said Aaron H. Allen or his representatives, upon all such chairs so manufactured and sold, the sum of thirty-five cents each, royalty, as hereinbefore provided, and agreeable to the returns herein required.

" 3d. The said Aaron H. Allen reserves to himself and does not grant to the said James L. Jackson & Brother the adaptation of said improvements so patented to folding portable chairs of the character and such as is commonly known as camp stools or chairs, and those now known as school furniture seats.

" 4th. The said James L. Jackson & Brother further covenant and agree to mark or paint on each and every chair made and sold by them under this license, using or employing the said invention or any part thereof, the following : ' Patented December 5, 1854 ; January 15, 1861, ext'd December 5, 1868.'

" 5th. The said Aaron H. Allen covenants and agrees that he will not grant licenses to any other person or persons to make and sell chairs of the character herein licensed to James L. Jackson & Brother : Provided the said James L. Jackson & Brother use due diligence in pushing the invention and supplying the public demand therefor. On their failure to do which at any time after twelve days' notice in writing being given, the said Aaron H. Allen reserves to himself the privilege to license other parties at his pleasure.

" 6th. The said Aaron H. Allen hereby agrees to institute or cause to be instituted legal proceedings against any and all parties, at his own expense, who may from time to time infringe said letters patent ; and he shall exercise due diligence in all such proceedings, so as to restrain such parties as promptly as possible, in order that the said James L. Jackson & Brother may enjoy the exclusive privilege of making and selling the chairs in question without competition.

" 7th. This license and agreement shall be binding upon the heirs, executors, administrators, assigns or other legal representatives of either and all of the parties hereto."

The declaration alleged as breaches of this contract : **first,** that the defendant had granted a license to one Bernhard Koech-

ling to make and sell the patented chair; and, second, that the defendant had refused and neglected to prosecute Koechling as an infringer. Answer, a general denial. Trial in this court, before *Wells*, J., who allowed a bill of exceptions in substance as follows:

On March 23, 1869, the plaintiffs and the defendant executed the instrument declared on, and it was recorded in the patent office on October 8, 1869. The defendant's reissued letters patent of January 15, 1861, were for an "improvement in seats for public buildings," described as follows: " The nature of my invention consists in a seat, set and moving upon a cross shaft or hinge, in such manner as that the seat, or front sitting portion thereof, can be turned up or elevated to afford room in passing into or out of the seat; or past it, and said seat forming a lever that, when down or adjusted to a sitting level, strikes and is supported by a stop which may be located in the rear of the seat fulcrum, and serves to sustain the seat and person occupying the same, the seat being extended backwards in rear of its fulcrum, and coming up under said stop. Such seat may be counterpoised so as to assume and retain a vertical or nearly vertical position when raised or not in use." " When there are a series of seats in a row, a continuous shaft or fulcrum may be used by forming on the end of each alternate section a screw arranged to pass through the frame or standard into a screw box or female thread connected with each adjoining section." " What is here claimed as new and useful is a swinging or lever seat, set and moving upon a cross shaft or hinges, and sustained when in use by a stop or stops so disposed as that the rear portion of the seat comes in contact with said stop or stops when the seat is turned down, substantially as herein set forth; and whether combined or not with weights or springs whereby the said seat may assume and retain a vertical or raised position automatically as herein specified."

The original patent was assigned by the defendant to Enos G. Allen, and in 1860 the plaintiffs obtained from him an exclusive license for the United States to make and sell the patented chair during the term of the original patent, which expired in December, 1868.

On February 26, 1869, Bernhard Koechling took out letters patent of the United States for "a new and useful improvement in folding chairs," thus described: "This invention relates to an improvement in that class of chairs which are generally used for opera houses, theatres and similar localities. The invention consists in the manner of hanging the seat to the side frames, which is done in such a manner that, when any number of chairs are to be placed in a convex or concave line, the devices for attaching the seat will always answer as they are. In most cases, where the chairs are not placed in a straight line, the holes which are bored through the side frames to receive the pin on which the seat swings must be arranged separately on each chair, to agree with the position of the same on the curved line. By the use of my improvement, I can manufacture or cast any amount of side frames and seats, and all parts can be put together as they are, no matter if the chairs are to be placed into a straight or curved line. Provision is also made that the seats on my chair may be turned up or down at pleasure." The specific claim was for the arrangement of stop-pins, fitting into corresponding mortises, by which the seat is supported both in front and rear of the pintle on which the seat is hung, and of certain iron straps, playing in slots, in the side pieces of the chair, in combination with the back.

The plaintiffs had commenced legal proceedings in the Circuit Court of the United States for the Southern District of New York in the name of Enos G. Allen against Koechling, for making chairs under his patent, on the ground of infringement of Allen's patent. This suit was pending at the expiration of Allen's original patent. In October, 1868, a similar suit by Enos G. Allen against Koechling was pending in the Circuit Court of the United States for the District of Massachusetts, and was on May 7, 1869, dismissed by agreement of counsel by the following entry: "The plaintiff in the above entitled cause, having examined the proofs in the same, consents that the bill may be dismissed without costs, and disclaims all right of further action against the defendant upon the patent on which this suit is brought. It is therefore agreed that the bill may be dismissed without costs."

On May 7, 1869, the defendant and Koechling executed the following contract under seal: " Whereas the case recently pending in the Circuit Court of the United States for the District of Massachusetts, by Enos G. Allen *v.* Bernhard Koechling, for an alleged infringement of letters patent of the United States, granted to Aaron H. Allen on the 5th day of December, 1854, for an improvement in seats for public buildings, has terminated in favor of the said Koechling, and the bill dismissed, because it was held that the chair made by said Koechling under letters patent of the United States, granted to him on the 26th day of February, 1867, was not deemed an infringement of the letters patent of said A. H. Allen.

" And whereas the said Koechling has agreed to pay said A. H. Allen the sum of two hundred and fifty dollars in hand, and the further sum of five hundred dollars each and every year during the continuance of the extended term of said letters patent, being seven years from the 5th day of December last, in consideration that the said Allen shall abide the decision of said cause, and shall not make any demand or claim on him for any alleged infringement by reason of any chair heretofore made by him, said Koechling, or which may hereafter be made by him under and in accordance with his, said Koechling's patent :

" Therefore this agreement witnesseth, that the said Aaron H. Allen shall and will abide the decision in said cause, and will not make any demand or claim against said Koechling on account of any chair heretofore made or shall hereafter be made as aforesaid ; provided, however, that said Koechling shall well and truly pay the sum of five hundred dollars on the fifteenth day of November of each year during the extended term of said letters patent, being the sum of thirty-five hundred dollars.

" And the said Koechling promises to pay said sums on the days aforesaid, provided that he shall fully enjoy the exemption from all claim, demand, action or other proceeding or interference as herein stipulated, either by the said Allen or any person claiming under or through him."

The suit referred to in the above contract had been on the same day discontinued by the agreement of counsel before stated. It did not appear that either of the parties in the present suit had any part in that arrangement or knew of it until afterwards

or had any control of the suit against Koechling. The plaintiffs, after they knew of the defendant's contract with Koechling of May 7, 1869, discontinued their suit in New York in the name of E. G. Allen against Koechling.

The plaintiffs required of the defendant before the commencement of this action to institute proceedings against Koechling on the ground that his chair was an infringement of the Allen patent. The defendant introduced evidence tending to show that he told the plaintiffs that he could not sue Koechling after his contract with him; but that the plaintiffs could do so in his name, or in his and their names jointly, and that if they would do so he would pay all expenses and costs of suit and render any assistance in his power; and that the plaintiffs declined to do this.

The defendant offered evidence tending to show that his patent was invalid on the ground of want of novelty, for the purpose of showing that he was not obliged to prosecute Koechling, or that, if he did do it, it could be of no benefit to the plaintiffs, because such suit could not be maintained. This evidence was excluded by the court, for the reason that it was incompetent for the defendant to prove his patent invalid.

The defendant also asked the judge to rule that the measure of damages, upon the defendant's breach of his contract to use reasonable diligence to sue and stop any one infringing on his patent, was such a sum as would fully compensate the plaintiffs for the costs, expenses, time and trouble of prosecuting the suits against infringers themselves in the name of the defendant, or in his name and their own jointly; and thus obtain the same protection of their rights under their license as they would get if the same suits had been prosecuted by the defendant. But the judge declined so to rule.

The defendant also asked the judge to rule that under the plaintiffs' exclusive license they could commence suits in the name of the defendant, or in his name and their own jointly, against Koechling, to stop him from making chairs under his patent if it infringed the defendant's patent, notwithstanding the contract of May 7, 1869, between the defendant and Koechling. But the judge refused so to rule; and did rule that after the execution of the contract of May 7, 1869, neither

the defendant, nor the plaintiffs in his name, or in his name and their own jointly, could maintain any proceedings against Koechling for making the chair patented by him, on the ground that he infringed on the defendant's patent.

The defendant asked the judge to rule that the plaintiffs could have prosecuted the suit commenced by them in the name of E. G. Allen against said Koechling in New York, and pending at the time of the contract of May 7, 1869, to final judgment, and thus settled the question of infringement in that suit, notwithstanding said E. G. Allen had undertaken to release said Koechling from all claims, as appears by the docket entry therein. But the judge declined so to rule.

The judge ruled and instructed the jury, that if they found the Koechling chair to be an infringement upon Allen's patent, under which the plaintiffs had their license, then the agreement of May 7, 1869, between the defendant and Koechling, of itself constituted a breach of Allen's contract with the plaintiffs; so that, upon the point of liability, the only question for them to determine was whether there was an infringement.

The defendant introduced the testimony of an expert to show that, in view of the state of the art at the time his patent was issued, the substantial novelty described was limited to the specific means or device shown for operating the seat and connecting it with the standards of the chair; and claimed that the patent must be so construed and limited; also, that the Koechling chair differed from Allen's in the form and arrangement of these specific means or devices, and therefore was no infringement; and asked the judge to rule and instruct the jury accordingly. The judge ruled and instructed the jury that the Allen patent was for a tilting seat, suspended upon a pivot back of the centre, and sustained as a lever under the weight of the sitter by a stop or stops bearing downwards at the back of the seat or in rear of the pivot, thus dispensing with supports in front of the fulcrum; that it was not limited to the particular form and position of the several parts by which this was effected, as shown in the plaintiffs' chair or in the specifications of Allen's patent but that if, in the Koechling chair, the same or substantially the same results were accomplished in the same manner or by the same means, or substantially so, it was an infringement, not-

withstanding differences in the form, appearance and arrangement of the parts. The judge also ruled that it would be not less an infringement, even if it contained something additional to what was contained in the Allen chair, and that additional part or device was itself patentable as an improvement, provided the Koechling chair embraced, as an essential part of its device, that for which the Allen patent was issued.

Upon the question of damages, the judge instructed the jury as follows : " If the jury find for the plaintiffs, they are entitled as damages to a fair compensation for the injury they sustained by the defendant's act in licensing Koechling, or his omission to sue him after notice of what he was doing ; and they are to consider, as evidence tending to show the amount of that injury, the number of chairs made and sold by Koechling between May 7, 1869, and the service of the writ in consequence of such act of licensing or omission to sue, and the loss to the plaintiffs by being deprived of the monopoly of the patent chairs to that extent ; and they are further to consider, as evidence tending to show the amount of the plaintiffs' damage, their loss of profit on their own chairs made and sold during that time by reason of Koechling's making and selling chairs in competition with them in consequence of defendant's licensing him or omitting to sue him after notice of what he was doing, so far as that competition might have been prevented by a reasonable effort to stop it by legal proceedings. If the jury are satisfied that the plaintiffs were deprived of orders which they would otherwise have had for chairs of their own between May 7, 1869 and the service of the writ, by the acts of Koechling in securing such orders and in making and selling his chairs, then they may consider, as evidence tending to show the damages to the plaintiffs by such acts, the profit which the plaintiffs would reasonably have made from filling the orders of which they were so deprived. On the question of what their reasonable profit would have been, the jury may take into consideration evidence of the prices at which such chairs were sold in 1867. But they must also take into consideration, in connection with it, the fact that at the time of the contract, the Koechling chair had already been in the market for nearly two years ; and it was for the jury to consider whether and how far the price, which had once

been reduced, could be restored merely by removing the competition, or by such reasonable efforts to do so as the defendant was bound to make. They must consider the whole matter with reference to the condition of things as they were when the contract was made. (It did not appear that there was any material difference between the cost of making such chairs in 1867 and the cost of making them after March, 1869, nor that there was any difference in the conditions of the business for the two periods ; and the plaintiff offered evidence that there was no such difference, except that, from and after 1867, the selling price was depressed by the competition of Koechling.) If the jury are satisfied that, on the chairs made and sold by the plaintiffs between May 7, 1869, and September 16, 1870, they were obliged by reason of the continued competition of Koechling to put their prices down below the reasonable price they would have received but for such competition, the plaintiffs are entitled to that difference as damage, so far as it might have been prevented by a reasonable effort to stop such competition by legal proceedings." To these rulings and refusals to rule the defendant alleged exceptions.

*J. G. Abbott & B. Dean,* for the defendant.

*C. Browne, (Jabez S. Holmes* with him,) for the plaintiffs.

GRAY, C. J. The questions of law presented in this case may be conveniently considered in a somewhat different order from that in which they arose at the trial and are stated in the bill of exceptions.

1. The extent of the invention claimed by the defendant in his patent must be determined by the specification of the patent itself. It is a question of construction, which in the case of letters patent, as of all other written contracts, is a question for the court. If any part of the invention thus claimed is not new, the patent may be invalid as claiming too much. *Minter* v. *Mower,* 1 Nev. & P. 595; *S. C.* 6 A. & E. 735; 1 Webst. Pat. Cas. 138, 142. But the testimony of the expert called as a witness for the defendant was not introduced to show a want of novelty, affecting the validity of the patent, but only upon the question of construction, to limit the meaning of the language of the specification. It was therefore rightly disregarded by the court. *Winans* v. *New York & Erie Railroad,* 21 How. 88,

2. The defendant, at the beginning of his specification, de-scribes the nature of his invention as consisting in a seat, set and moving upon "a cross shaft or hinge" in such a manner that the front part of the seat can be raised to afford room in pass-ing in, out or by, and form a lever that, when brought to a level, strikes and is supported by a stop in the rear of the ful-crum. In the further description given to enable others to use the invention, he shows that the fulcrum or centre of motion, by which the seat is suspended on or attached to the standards or frame of the chair, may consist either of a shaft extending across the seat or of a pin on each side. And what he finally claims as new and useful is "a swinging or lever seat, set and moving upon a cross shaft or hinges, and sustained when in use by a stop or stops so disposed as that the rear portion of the seat comes in contact with said stop or stops when the seat is turned down, substantially as herein set forth."

In short, the invention, as claimed by him, consists in a tilt-ing seat, supported on each side upon a pivot, and which is kept in place, under the weight of the sitter upon the front, by one or more stops bearing down upon the seat behind the pivot; and this whether the pivot or fulcrum on either side is or is not part of a continuous shaft. The instruction given to the jury as to the extent of the invention claimed by the defendant was there-fore correct.

Such being the legal construction of the defendant's patent, it was not limited to any particular form or arrangement of the several parts; and the jury were rightly instructed that a chair by which the same or substantially the same results were ac-complished in the same manner or by the same means, or sub-stantially so, was an infringement, notwithstanding differences in the form, appearance and arrangement of the parts. *Minter* v. *Wells*, 1 Webst. Pat. Cas. 127; *S. C.* 5 Tyrwh. 163; 1 C., M. & R. 505. *Winans* v. *Denmead*, 15 How. 330. *Odiorne* v. *Wink-ley*, 2 Gallis. 51. *Blanchard* v. *Beers*, 2 Blatchf. C. C. 411.

3. The further instruction, that if the later patent embraced, as an essential part of its device, that for which the first patent was issued, it would be not less an infringement, even if it con-tained something additional which was itself patentable as an improvement, was equally correct. *Foster* v. *Moore*, 1 Curtis, 279, 292. *McCormick* v. *Talcott*, 20 How. 402, 405.

4. The question whether the Koechling patent was an infringement of the defendant's was rightly submitted as a question of fact to the jury. *Hawkes* v. *Remington*, 111 Mass. 171, and cases there cited.

5. By an indenture of March 23, 1869, the defendant granted to the plaintiffs "the exclusive liberty, license, power and authority to make, use and sell within and for the United States, for and during the unexpired term of said patent, the said improvement as patented under and by said letters patent, excepting only the adaptation of said improvement to camp chairs and school furniture;" and covenanted that he would not grant licenses to any other person to make and sell chairs of the character included in the license to the plaintiffs; and that he would at his own expense institute or cause to be instituted legal proceedings against all infringers of said letters patent, and exercise due diligence in such proceedings so as to restrain them as promptly as possible, in order that the plaintiffs might enjoy the exclusive privilege of making and selling the chairs in question without competition.

The declaration in the present case alleges two breaches of the covenants of the defendant in the indenture; the one by granting a license to Koechling, and the other by neglecting to sue him as an infringer.

The agreement of May 7, 1869, by which the defendant, in consideration of the payment of a certain sum annually by Koechling, agreed not to make any claim on him for any alleged infringement, was essentially a license. Its character is not affected by the false recital therein that the previous action against Koechling had been decided in his favor on the merits; it appearing that the entry of judgment in that action was made by an arrangement between the counsel of the parties thereto, and without any assent, knowledge or control of these plaintiffs. It was therefore rightly ruled that if the Koechling chair was an infringement of the defendant's patent, the agreement between the defendant and Koechling constituted a breach of the first covenant sued on.

6. The grant from the defendant to the plaintiff, contained in the indenture of March 23, 1869, not amounting to an assignment, either of the whole patent or of an undivided part thereof,

for the territory described therein, was a mere license, and gave the plaintiffs no interest in the patent itself, and no right to sue in their own names for any infringement thereof. *Gayler* v. *Wilder*, 10 How. 477. It might authorize the licensees to assert, by action in the name of the licensor, any right which he had in respect to the subject of the license, and prevent him from releasing any action so brought by them. *Goodyear* v. *McBurney*, 3 Blatchf. C. C. 32. *Goodyear* v. *Bishop*, 4 Blatchf. C. C. 438. But after he had executed the release under seal to Koechling, neither he, nor his licensees in his name, could institute or intervene in an action against Koechling. Upon this point, therefore, the rulings at the trial were correct.

7. This indenture contains no express covenant that the patent is valid, nor even a recital that the defendant is the inventor of the subject thereof. The recital is only of the issue of letters patent to the defendant, and the plaintiff's desire of obtaining a license to use the improvement so patented. The grant is of a license to make, use and sell " the said improvement as patented under and by said letters patent." The covenants are, 1st, not to license other persons ; and 2d, to institute and prosecute legal proceedings against all who infringe the patent. The words " in order that the said James L. Jackson & Brother may enjoy the exclusive privilege of making and selling the chairs in question without competition " do not constitute an independent covenant, and are not declared on as such. They are inserted by way of stating the purpose of the covenant to which they are annexed. Reading them in connection with that covenant and with the rest of the instrument, we are all of opinion that they do not amount to a warranty by the licensor that the licensees shall enjoy the privilege of making the chairs in question against persons not claiming rights under the licensor.

The cases of *Bowman* v. *Taylor*, 2 A. & E. 278; *S. C.* 4 Nev. & Man. 264; and *Bliss* v. *Negus*, 8 Mass. 46, cited by the learned counsel for the plaintiffs, do not appear to us to support the opposite conclusion. In *Bowman* v. *Taylor*, the action was by the licensor against the licensee, the indenture contained a distinct recital that the licensor had invented the improvements in question; and the decision was put upon that ground, and, by the earlier and the later English authorities, could hardly be

sustained upon any other. *Hayne* v. *Maltby*, 3 T. R. 438.
*Smith* v. *Scott*, 6 C. B. (N. S.) 771, 782. In *Bliss* v. *Negus*,
the deed from the plaintiff recited the issue of a patent securing
to the patentee the exclusive right to the improvement in ques-
tion, and its assignment to the plaintiff, and purported to assign
to the defendant all the right and privilege so conveyed, with a
covenant to warrant and defend the same against the claims of
any other persons ; and yet the court was of opinion that this
deed contained no covenant which could sustain an action by
reason of the invalidity of the patent for want of novelty, and
held that, if the patent was invalid for that cause, the deed
to the defendant constituted no consideration for a promissory
note.

8. Upon the question of the correctness of the ruling exclud-
ing the evidence offered by the defendant to show that his patent
was invalid, there is a difference of opinion among the judges,
and the court desires the assistance of a further argument of
counsel upon that question, as well as upon the instructions to
the jury on the question of damages, before deciding the case.

*Case to stand for further argument accordingly.*

The case was reargued on these points by the same counsel in
November, 1875.

GRAY, C. J.    The question to which the strength of the second
argument has been directed is thus stated in the bill of excep-
tions: " The defendant offered evidence tending to show that
his patent was invalid on the ground of want of novelty, for the
purpose of showing that he was not obliged to prosecute Koech-
ling, or that, if he did do it, it could be of no benefit to the plain-
tiffs, because such suit could not be maintained.    This evidence
was excluded by the court, for the reason that it was incompe-
tent for the defendant to prove his patent invalid."

Upon the first argument of this question, the very able and
learned judge who presided at the trial adhered to the opinion
which he had expressed to the jury, and one of the other judges
was inclined to concur with him.    But upon further considera-
tion all the surviving judges are of opinion that the evidence
should have been admitted, as affecting the measure of the dam
ages which the plaintiffs were entitled to recover.

The ruling at the trial evidently proceeded upon the ground that the defendant was estopped, either by deed or *in pais*, to show that his patent was invalid.

But to constitute an estoppel by deed, a distinct and precise assertion or admission of a fact is necessary. *Right* v. *Bucknell*, 2 B. & Ad. 278. *Wight* v. *Shaw*, 5 Cush. 56, 64. *Miller* v. *Ewing*, 6 Cush. 34. *Campbell* v. *Knights*, 24 Maine, 332. *Pike* v. *Galvin*, 29 Maine, 183. *Pelletreau* v. *Jackson*, 11 Wend. 110, 117 ; *S. C. nom. Jackson* v. *Waldron*, 13 Wend. 178. *Brown* v. *Jackson*, 3 Wheat. 449. *Van Rensselaer* v. *Kearney*, 11 How. 297, 325. We have already decided that the indenture contains no warranty or covenant that the defendant is the inventor of the improvement in question. It does not state that an exclusive privilege is owned by the defendant or conveyed to the plaintiffs. The defendant merely covenants that he will diligently proceed against infringers, so that the plaintiffs "may enjoy the exclusive privilege of making and selling the chair in question without competition," and that he will not grant inconsistent licenses. If he does grant such licenses, or fails to bring such suits, it is a breach of contract, for which he is liable in damages. But proving that his patent was invalid does not deny anything that he has ever asserted.

Nor does the case show any estoppel *in pais*. The defendant does not appear to have made any representation as to the validity of the patent, otherwise than as expressed in the indenture. To constitute an estoppel *in pais*, it is essential that the defendant should, by word or act, have represented the fact to be different from what he now attempts to show it to have been. Mere disappointment in expectation, or breach of promise or covenant relating to the future, cannot constitute an estoppel *in pais*. *Langdon* v. *Doud*, 10 Allen, 433. *Jorden* v. *Money*, 5 H. L. Cas. 185.

It was argued that this case was analogous to those in which it has been held that a licensee, continuing to enjoy the privilege of his license, is estopped to deny the validity of the patent, when sued for the royalty. *Kinsman* v. *Parkhurst*, 18 How. 289, 293. *Lawes* v. *Purser*, 6 E. & B. 930. *Noton* v. *Brooks*, 7 H. & N. 499. *Crossley* v. *Dixon*, 10 H. L. Cas. 293. But the distinction is obvious. In those cases, the licensee is held to pay

the exact compensation stipulated for. In the present case, the licensor does not undertake to avoid the payment of anything which he has agreed to pay; but, the damages for the alleged breaches of his covenants not being ascertained or liquidated by the terms of the contract, he offers to prove the invalidity of the patent, as bearing upon the question what the amount of such damages really is.

So far as the plaintiff relied upon the covenant to prosecute infringers, the evidence offered was admissible, because, if the patent was invalid for want of novelty, no damages could have been recovered for infringing it, and the attempt to recover such damages could have produced no beneficial result, either to the patentee or to any one claiming rights under him, and therefore the plaintiffs would suffer no injury from the failure of the defendant to prosecute Koechling.

Upon the other breach of covenant, by licensing Koechling, the evidence of the invalidity of the patent would not be equally conclusive, but we are of opinion that it was competent. It would be for the jury to determine its weight, and, taking it into consideration with all the other evidence in the case, to decide whether and to what extent the defendant's act in licensing Koechling had excited competition injurious to the plaintiffs' business under their license from the defendant.

Upon either branch of the case, the plaintiffs can recover damages only for the injury which they prove that they have suffered by the defendant's acts in violation of his covenants. The fraudulent character of those acts, and the difficulty of proving such damages, cannot change the burden of proof or the measure of the defendant's liability.

*Exceptions sustained.*