[Civil No. 611.    Filed February 23, 1898.]

[52 Pac. 469.]

## C. S. McCORMACK et al., Defendants and Appellants, v. THE ARIZONA CENTRAL BANK, Plaintiff and Appellee.

1. APPEAL AND ERROR—REVIEW—FINDINGS—CONFLICT IN EVIDENCE.— Where the evidence is conflicting upon a point this court will not disturb the findings of the trial court thereon.

2. CONTRACT—CONSIDERATION—PROMISE TO DELIVER NOTE HELD AS COLLATERAL.—Where at the time of the assignment of a note from Nellis to Boyce the bank held the same as collateral security for an existing indebtedness from Nellis to it, a promise made by its cashier to Boyce to deliver up the note, being without consideration, is not enforceable by Boyce.

3. ESTOPPEL IN PAIS—PROMISE TO DO SOMETHING IN FUTURE—LOAN ON PROMISE OF THIRD PARTY TO SURRENDER BORROWED NOTE.—The fact that Boyce, in reliance upon the promise of the cashier of a bank to surrender to him a note of Nellis, held by such bank as collateral security, made advances to Nellis, cannot operate to estop the bank from enforcing its rights against such collateral, as an estoppel *in pais* cannot be based upon a mere promise to do something in the future.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Coconino. J. J. Hawkins, Judge. Affirmed.

The facts are stated in the opinion.

Herndon & Norris, for Appellants.

Edward M. Doe, for Appellee.

Appellants seek to invoke an estoppel against the bank because of its cashier's promise to release the note and send it to Boyce, and because of subsequent advances claimed to have been made by Boyce in reliance thereon. But the promise upon the faith of which Boyce it is claimed acted had reference to action in the future. It was but the expression of an intention which Boyce would have no legal right to act upon because circumstances might change and the promisor's mind change with them. Mr. Bigelow says: ''The representation or concealment must, in the second place, like a recital in all ordinary cases, have reference to a present or past state of things; for if a party make a representation concerning something in the future, it must be generally a statement of intention or opinion, uncertain to the knowledge of both parties, or it will come to a contract with the peculiar consequences of a contract.'' Bigelow on Estoppel, 555.

In *Langdon* v. *Doud*, 10 Allen, 433, the court says: ''A person cannot be bound by any rule of morality or good faith not to change his intention, nor can he be precluded from showing such a change merely because he has previously represented that his intentions were once different from those which he eventually executed. . . . The reason [of the doctrine of estoppel] wholly fails when the representation relates only to a present intention of a party, because, being in its nature uncertain and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action.'' See, also, *Strong* v. *Korab*, 65 Iowa, 267; *Allen* v. *Hodge*, 51 Vt. 393; *Jackson* v. *Allen*, 120 Mass. 64.

The rule to which appellants invoke the attention of the court in this proposition is clearly inapplicable in this case for the further reason that an estoppel *in pais* cannot be cre-

ated where neither fraud nor injury exist. *Flower* v. *Elwood*, 66 Ill. 433; *People* v. *Brown*, 67 Ill. 435.

SLOAN, J.—The appellee, the Arizona Central Bank, brought suit in the court below to foreclose a mortgage upon real estate in Coconino County given by appellants C. S. and Anna McCormack, to secure their promissory note in the sum of $497, dated December 9, 1892, and due two years after date. This note was made payable to William Nellis or order. The appellant C. E. Boyce was made a party defendant upon the ground, as stated in the complaint, that said Boyce claimed some interest in the note and mortgage sued upon by reason of an attempted assignment of the same by Nellis, the payee of the note, to said Boyce. The defendants in the action, appellants here, in their answer set up that the Arizona Central Bank had no interest in the note and mortgage sued upon at the time of suit, and alleged that the note, shortly after its execution, had been placed with the said Arizona Central Bank by said Nellis to secure an overdraft; that, after the said overdraft had been paid and settled by said Nellis, the note was left with the said bank for safe-keeping, and while so held Nellis sold and transferred the same to appellant Boyce, together with the mortgage, for a valuable consideration, by a duly executed and recorded assignment; and further alleged that, upon the execution of the assignment, Nellis gave Boyce an order in writing upon the Arizona Central Bank to turn over the note to said Boyce; and that thereafter Boyce demanded the note of J. H. Hoskins, cashier of the bank; that upon said demand said Hoskins refused to deliver the note until he could see Nellis, the payee; that thereafter Boyce, in company with said Nellis, visited the bank, when Boyce again demanded the note, and Nellis then instructed Hoskins, the cashier, to deliver it up to Boyce, but that he did not deliver it at that time for the reason that he (said Hoskins) claimed that it had been mislaid, and then and there promised and agreed that he would send the same to Boyce at the town of Williams; and further alleged, upon information and belief, that thereafter the said bank let Nellis have the further sum of one hundred dollars, and thereupon claimed to hold the note as collateral security for the payment of the same, and thereafter refused to deliver up the note unless the said ad-

vance of one hundred dollars, so made by the bank, be paid. The answer further alleged that the note, before the commencement of the suit, had been fully paid by McCormack to the defendant Boyce, and that Boyce, in consideration of such payment, had executed and recorded a cancellation of the mortgage, and that both the note and mortgage were fully satisfied and paid. The case was tried by the court without the aid of a jury, and judgment rendered for the plaintiff in the action foreclosing the mortgage for the amount found due upon the note.

Upon the question as to whether or not, at the time of the attempted assignment of the note and mortgage by Nellis to Boyce, the bank held the note as collateral security for overdrafts of Nellis, there was some conflict of testimony. Hoskins, the cashier, testified that at that time Nellis was indebted to the bank in a sum in excess of two thousand dollars. The evidence upon this point being conflicting, and the trial court having found for the plaintiff, we cannot, of course, disturb this finding. And the case, therefore, so far as any question we are called upon to review is concerned, turns upon whether or not the bank, through Hoskins, its cashier, agreed and promised to deliver up the note to Boyce upon the order of Nellis, and whether, if such promise was made, the bank thereby parted with all interest it may have had in the note, or was thereafter estopped from making claim to the same as collateral security held by it for the overdraft of Nellis. The testimony of the witnesses as to what occurred at the time the demand was made upon Hoskins for the delivery of the note, while somewhat conflicting upon minor details, is substantially that Nellis and Boyce visited the bank, and that Nellis then told Hoskins, the cashier, that he had assigned the note to Boyce, and asked Hoskins to give up the note to Boyce; that Hoskins then said that the note had been misplaced, but that he would look for the same, and would send it to Boyce at Williams at a later time; that upon the following day, or soon after, the bank let Nellis have an advance of one hundred dollars, and charged the same against the note and mortgage as collateral; and that thereafterwards they refused to surrender and give up the note to Boyce. There was some testimony to the effect that, at the time this conversation was had, the bank was about making a shipment of sheep to California,

the property of Nellis, under an arrangement by which the proceeds of the sheep were to be applied in reduction of Nellis's debt to the bank. Hoskins testified that his promise to give up the note was made under the belief that the proceeds of this shipment of sheep would so reduce Nellis's debt that the bank could safely give up the McCormack note to Boyce. He also testified that the bank realized nothing from this shipment by reason of the fact that Boyce, to whom Nellis was also largely indebted, attached the sheep in California, and the bank thereby realized nothing from the shipment, and for that reason the bank retained the note and refused to deliver up the same to Boyce. The testimony also tended to show that Boyce, after the attempted assignment of the note by Nellis, made advances to Nellis, in reliance upon the promise of the bank, through Hoskins, its cashier, to surrender or give up the note. Had it appeared that the bank, at the time Nellis attempted to assign the note and mortgage to Boyce, had no interest in the note, by reason of the fact that the bank did not then hold the same as collateral security for any indebtedness of Nellis to the bank, then it follows that the bank was then the mere bailee of the note for Nellis, and the assignment by Nellis to Boyce vested title to the note and the right of possession in the latter, and the bank could have no right or authority thereafter to make any further advances to Nellis and hold the note as security therefor. But, as we have seen, the court held that at the time of the assignment of the note from Nellis to Boyce, the bank held the same as collateral security for an existing indebtedness, and that the bank was therefore a bailee, with a right in the property and to its possession, which continued until this debt was paid and satisfied. The bank having an interest in the note and a right to its possession, the promise made by Hoskins, the cashier, to deliver up the note to Boyce was without consideration, a mere *nudum pactum,* and could not be enforced. Again, even if it were true, as claimed by Boyce, that he relied upon the promise of Hoskins that he would give up the note, and upon the faith of this promise had made subsequent advances to Nellis upon the note, it could not operate to estop the bank from asserting its right to enforce payment of the same, and to foreclose the mortgage given to secure it. It is well settled that an estoppel *in pais* cannot be based upon a mere promise

to do something in the future, or upon mere statements of intention upon the part of the promisor to act in any particular matter or manner. "A person cannot be bound by any rule of morality or good faith not to change his intention, nor can he be precluded from showing such a change merely because he has previously represented that his intentions were once different from those which he eventually executed." *Langdon* v. *Doud,* 10 Allen, 433. To the same effect is *Jackson* v. *Allen,* 120 Mass. 64. We find no reversible error in the record, and the judgment of the court below is therefore affirmed.

Street, C. J., Davis, J., and Doan, J., concur.