MARVEL CARBURETOR CO. *v.* CARTER.

1. PATENTS—LICENSES—ESTOPPEL—INFRINGEMENT.

In suit by exclusive licensee, a corporation, against patentee to recover sum collected by latter from infringer, plaintiff *held*, not estopped by testimony of its president in former suit by defendant for cancellation of the contract of license wherein he claimed his company was no longer interested in the patent where subject then under discussion was interest in the patent and not company's right to sue infringers.

2. SAME—INFRINGEMENT—RELEASE—LICENSES.

A patentee may release and discharge an infringer of his patent from all damages arising from said infringement regardless of whether an exclusive licensee may have an interest in those claims or not, provided such release is made before the licensee has instituted proceedings in the name of the patentee.

3. SAME—EXCLUSIVE LICENSES—INFRINGEMENT—PARTIES.

While a patentee holds the legal title to all infringement claims he is trustee for his exclusive licensee to the extent of the licensee's interest in the infringement claims and must allow use of name to licensee as plaintiff in any action brought against third parties to protect the exclusive right.

4. SAME—INFRINGEMENT—LICENSES—DAMAGES—EVIDENCE.

In suit by exclusive licensee against patentee to recover sum for which defendant settled certain infringement rights, finding of sum of $48,490.51 *held*, supported by testimony where defendant had accepted $100,000 in payment for such infringement and sale of certain other patents.

Appeal from Wayne; Ferguson (Homer), J. Submitted June 18, 1937. (Docket No. 111, Calendar No. 39,545.) Decided September 1, 1937. Rehearing denied October 13, 1937. Certiorari to Supreme Court of United States denied February 14, 1938, 303 U. S. — (58 Sup. Ct. 610).

Bill by Marvel Carburetor Company, an Illinois corporation, against William C. Carter and others for an accounting, an injunction and a money decree. Decree for plaintiff. Defendant Carter appeals. Affirmed.

*Clark, Klein, Brucker & Waples,* for plaintiff.

*Joseph R. Joseph,* for defendant Carter.

SHARPE, J. In November, 1923, defendant Carter entered into a written agreement with the Marvel Carburetor Company granting to that company the exclusive license to manufacture and sell all carburetors and fuel supply systems based on Carter's inventions and to sue for infringement of patents secured by Carter.

In August, 1931, Carter commenced a suit in the chancery court of Genesee county for an accounting for royalties. This suit resulted in Carter receiving nearly $50,000 and a cancellation of the contract as of July 29, 1932. This cause was appealed to the Supreme Court where it was affirmed by a divided court. See *Carter* v. *Marvel Carburetor Co.,* 263 Mich. 48, for further facts and a copy of the written agreement.

During the interval between 1925 and the time of the judicial cancellation of the contract between Carter and the Marvel Carburetor Company, a number of fuel pumps based on Carter's ideas were assembled by the carburetor company and then sent out and demonstrated to various automobile and accessory manufacturers, one of which was the A C Spark Plug Company.

Carter secured a patent upon a particular kind of fuel pump. This pump was also demonstrated to the

spark plug company which began to manufacture pumps embodying Carter's patents which were under license to the Marvel Carburetor Company. Carter through his attorneys notified the Marvel Carburetor Company that the spark plug company was infringing upon his patents, but no action was taken by the Marvel Carburetor Company to enjoin this infringement.

December 2, 1932, Carter sold and transferred all his interest and title in and to letters patent No. 1,695,534 granted December 18, 1928; No. 1,500,105 granted July 8, 1924; and No. 1,802,136 granted April 21, 1931 to the A C Spark Plug Company; and on the same day gave to General Motors Corporation a written license to make, use and sell fuel pumps under patent No. 1,819,591 during the life of this patent. The price paid Carter for the three patents and the license was $100,000. The assignment to the spark plug company contained the following:

"Now, therefore, in consideration of one thousand dollars and other considerations, the receipt of which is hereby acknowledged, I, William C. Carter, by these presents, do sell, assign, and transfer unto the said A C Spark Plug Company, the whole right, title and interest in and to said letters patent and each of them and in and to any and all reissues and extensions thereof and in and to the inventions set forth in each of them, including any and all foreign rights corresponding thereto, if such rights exist; together with the right to receive and retain for its own benefit all compensations or recoveries incident to infringement of any and all such patents heretofore by others, and to bring suit therefor, in my name or otherwise; the same to be held and enjoyed by the said A C Spark Plug Company for its own use and behoof, and for its successors, assigns and legal representatives, to the full end of the term for which

said letters patent are granted, as fully and entirely as the same would have been held by me had this assignment and sale not been made.

"I also hereby release said A C Spark Plug Company, its customers and the users of its products from all claim or claims which I may have against it and/or them on account of infringement of said patents, or any of them, by it and/or them and hereby confess satisfaction of all such claims."

December 2, 1932, plaintiff filed a bill of complaint in the chancery court of Wayne county claiming that Carter had settled with the A C Spark Plug Company any claims that plaintiff company had against it for infringement under patent No. 1,695,534 granted December 18, 1928, between that date and July 29, 1932, the date of the judicial cancellation of the agreement between Carter and plaintiff company.

The trial court found that the patents covered by the assignment to the spark plug company were patents and inventions owned or acquired by Carter during the life of the contract between Carter and the Marvel Carburetor Company; that under paragraph 13 of the above contract the carburetor company had the right to bring suit for infringement by others and any recovery of damages would become the property of the carburetor company; that the Marvel Carburetor Company was an exclusive licensee only and not an assignee of the patent, consequently, plaintiff could not maintain a suit in its own name for past infringements, but would have to maintain such suit in the name of Carter, as patentee; that Carter had transferred three separate and distinct property rights to the spark plug company and General Motors Corporation, namely, the title to the patent, the right of Carter for infringe-

ment from July 29, 1932, to December 2, 1932, and all claims for infringement of the patents prior to July 29, 1932, regardless of whether those infringements were recoverable by Marvel Carburetor Company or Carter; and that the infringement rights sold by Carter and for which he should account to plaintiff company were worth the sum of $48,490.51.

Defendant Carter appeals and contends that plaintiff company is estopped from asserting that Carter sold or assigned certain rights of plaintiff company; that such estoppel is based upon the testimony given by Mr. Taft, president of plaintiff company, in a suit between Carter and Marvel Carburetor Company in Genesee county; that the assignment of certain patents to the A C Spark Plug Company and General Motors Corporation on December 2, 1932, did not assign any of the rights that plaintiff company had or may have against the spark plug company; that the following paragraph in the agreement of December 2, 1932, merely assigns the individual rights of Carter as he (Carter) had no power to release any claim that plaintiff company may have had against the spark plug company for infringement:

"I also hereby release said General Motors Corporation and its subsidiaries, present and future, and its and their customers and the users of its and their products from all claim or claims which I may have against it and/or them on account of infringement of said patent by it and/or them and hereby confess satisfaction of all such claims."

Plaintiff contends that it had a just claim against the spark plug company on account of confessed infringements of the pump patent; that Carter, as owner of the patent, had the legal title to the claim and had the exclusive right to sue, but because of the

agreement made by Carter with the spark plug company, the plaintiff company was barred from suing through Carter, or otherwise, the spark plug company or any other infringer of the patents; that Carter as owner of the patent is a trustee of the funds which it received for plaintiff company, its licensee; and that where the trustee has commingled the funds of his beneficiary with his own funds, the burden is upon the trustee to show the portion of the funds belonging to him.

In this cause there appear to be certain undisputed facts: the Marvel Carburetor Company had the exclusive right to manufacture and sell any and all of Carter's patents; it had the right to sue for infringement and retain all damages recovered; the spark plug company infringed the pump patent beginning in 1928 and up to July 29, 1932, when the contract between Carter and plaintiff company was judicially cancelled; and on the 2d day of December, 1932, Carter assigned to the spark plug company the patents that had been infringed by that company, together with the right of recovery against infringers as well as releasing the spark plug company from infringement claims.

Reference has been made to the testimony of Mr. Taft, president of the Marvel Carburetor Company, which appeared in the record taken in the Genesee county case and is as follows:

"*Q.* Now, your company does not claim any interest in that pump, as I understand it?

"*Mr. Clark* (Attorney for Marvel Carburetor Company): 'We do not claim any interest in any of that.'

"*A.* The contract has been cancelled in so far as we are concerned.

"*Q*. So that now the defendant company, as far as`
you know, and you are its head, claims no interest in
the devices and inventions Mr. Carter claims as his
and known as a diaphragm pump or fuel supply de-
vice, you do not claim any interest in that?

"*A*. We do not.    *    *    *

"*Q*. Your company claims no interest in the Car-
ter devices or inventions as applied to carburetors
manufactured by your concern for anybody?

"*A*. That is correct.

"*Q*. Is that right?

"*A*. Yes, sir, we do not claim any interest.

"*Q*. Then of course you have no objection at all to
the judicial cancellation of the contract?

"*A*. None whatever.

"*Mr. Withey:* I think that is all."

The trial court in the case at bar interprets this
testimony as a disclaimer by the Marvel Carburetor
Company of any interest in the patent as a patent
and finds that it was not contemplated by such testi-
mony to relinquish any existing rights of action on
account of previous infringements which were cov-
ered by paragraph 13 of the contract between Carter
and the Marvel Carburetor Company.

We think the trial court was correct, when Mr.
Taft was being examined as a witness, the discussion
centered around the cancellation of Carter's con-
tract and the interest that plaintiff company had in
the patent; the question of the right of plaintiff com-
pany to sue infringers was not under discussion and
plaintiff's rights were not thereby waived.

The principal question involved in this cause re-
lates to the release by Carter to the A C Spark Plug
Company of all infringement claims.   The rule ap-
pears to be that the patentee (Carter) may release
and discharge an infringer (A C Spark Plug Com-

pany) of his patent from all damages arising from said infringement regardless of whether a licensee (Marvel Carburetor Company) may have an interest in those claims or not, provided such release is made before the licensee has instituted proceedings in the name of the patentee.

The leading case upon this subject is *Jackson* v. *Allen*, 120 Mass. 64. In this case the defendant (patentee) granted to plaintiff a license in March, 1869. In May, 1869, the defendant gave a release to one Koechling (an infringer) and agreed not to bring suit against him for infringement. The plaintiff (licensee) subsequently requested the defendant (patentee and licensor) to institute suit against Koechling on account of said alleged infringements and upon his refusal to do so brought suit upon the covenants contained in the license agreement under which he agreed to sue infringer and not to grant other licenses. The defendant contended that his release did not bar plaintiff from suit and hence there was no breach in this regard. Upon this subject the trial court said:

"The defendant also asked the judge to rule that under the plaintiffs' exclusive license they could commence suits in the name of the defendant, or in his name and their own jointly, against Koechling, to stop him from making chairs under his patent if it infringed the defendant's patent, notwithstanding the contract of May 7, 1869, between the defendant and Koechling. But the judge refused so to rule; and did rule that after the execution of the contract of May 7, 1869, neither the defendant, nor the plaintiffs in his name, or in his name and their own jointly, could maintain any proceedings against Koechling for making the chair patented by him, on the ground that he infringed on the defendant's patent."

The supreme court of Massachusetts in affirming this ruling said:

"The grant from the defendant to the plaintiff, contained in the indenture of March 23, 1869, not amounting to an assignment, either of the whole patent or of an undivided part thereof for the territory described therein, was a mere license, and gave the plaintiffs no interest in the patent itself, and no right to sue in their own names for an infringement thereof. *Gayler* v. *Wilder,* 10 How. (51 U. S.) 477. It might authorize the licensees to assert, by action in the name of the licensor, any right which he had in respect to the subject of the license, and prevent him from releasing any action so brought by them. *Goodyear* v. *McBurney,* 3 Blatchf. U. S. C. C. 32; *Goodyear* v. *Bishop,* 4 Blatchf. U. S. C. C. 438. But after he had executed the release under seal to Koechling, neither he, nor his licensees in his name, could institute, or intervene in an action against Koechling. Upon this point, therefore, the rulings at the trial were correct."

But while the patentee holds the legal title to all' infringement claims he is the trustee for his licensee to the extent of the licensee's interest in the infringement claims. In *Independent Wireless Telegraph Co.* v. *Radio Corporation of America,* 269 U. S. 459 (46 Sup. Ct. 166), Mr. Chief Justice Taft, who wrote the opinion, said:

"It seems clear then on principle and authority that the owner of a patent who grants to another the exclusive right to make, use or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain

damages for the injury to his exclusive right by an infringer or to enjoin infringement of it. Such exclusive licenses frequently contain express covenants by the patent-owner and licensor to sue infringers that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But without such express covenants, the implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by the licensee of the monopoly which by personal contract the licensor has given.''

See, also, *Waterman* v. *MacKenzie*, 138 U. S. 252 (11 Sup. Ct. 334); *Littlefield* v. *Perry*, 21 Wall. (88 U. S.) 205.

The sale by Carter to the A C Spark Plug Company was for a consideration of $100,000. The things sold consisted of Carter's patent and certain infringement rights. The trial court found that the damage caused plaintiff company by reason of the sale of the so-called infringement rights was the sum of $48,490.51. There is testimony to support his finding.

The decree of the circuit court is affirmed. Plaintiff may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.