**E. I. S. MFG. CO., Inc., v. SUPCO PRODUCTS CORPORATION et al.**

District Court, S. D. New York.

Nov. 7, 1938.

Harry Lea Dodson, of New York City, for plaintiff.

Harry Price, of New York City, for defendant Supco Products Corporation.

## PATTERSON, District Judge.

The suit is one for patent infringement, brought by an exclusive licensee against an assignee of the patent. The patentee is joined as a party defendant, but no relief is demanded against him. All the parties are citizens of New York. While the stakes are small, there are facts in the case that take it out of the ordinary run.

Bischof in 1932 filed application for a patent on a take-up device for use on cables of automobile brakes. By written agreement of March 4, 1933, he granted to the plaintiff the exclusive right to manufacture and sell the device for a term of ten years. The agreement was in the form of a letter signed by Bischof and accepted by the plaintiff. Bischof was to receive a specified royalty on each device sold, to be paid quarterly or monthly as the parties might prefer. The agreement also provided that if the licensee should sell less than 5,000 in any given six months, "I will automatically have the right to manufacture this and sell it myself or thru anyone I see fit, giving Eis Manufacturing Company 30 days notice, prior to the expiration of the six months that I intend to do so". Shortly after

receiving the license the plaintiff commenced manufacture and sale of the device. About six months later the defendant Supco Products Corporation, which was then a stranger to Bischof, put a competing product on the market.

The patent was issued to Bischof on January 16, 1934. The plaintiff a few days later sent a copy of the patent to the Supco Company and warned it to desist from infringement. The Supco Company asked the plaintiff what rights it had in the patent, but could get no satisfaction beyond the statement that the plaintiff had "exclusive rights on this patent." Bischof, the patentee, in December 1934 brought suit for infringement against the Supco Company. The present plaintiff was not a party to the suit and did not lend assistance to the prosecution of it. That case was settled on November 9, 1935, the Supco Company paying Bischof $600 and receiving a general release and an assignment of the patent. By the terms of the assignment Bischof transferred not only the patent but also his rights as licensor under the license which he had given to the plaintiff, and the assignment of the patent was expressly made subject to that license.

The plaintiff had meanwhile made royalty payments to Bischof. Such payments were continued down to July 1936, when the plaintiff first learned of the assignment which Bischof had made. Later payments under the license were made into court for the account of the Supco Company, the plaintiff claiming in its bill that damages from infringement by the Supco Company exceeded the amount of the royalties. From 1933 down to date there have been two periods of six months in which the royalty payments reflected sales of less than 5,000 devices, the first from October 1, 1934 to March 31, 1935, the second from October 1, 1936 to March 31, 1937. No notice that the exclusive feature of the license was to be terminated was ever given.

The present suit was brought in October 1936 against Bischof and the Supco Company. The bill pleads the issuance of the patent to Bischof, the exclusive license to the plaintiff, the assignment of the patent to Supco Company, and infringement by the Supco Company. The answer of the Supco Company does not put in issue the validity of the patent. It does deny infringement and asserts that

the license to the plaintiff is no longer in existence. By an amended counterclaim the Supco Company alleged infringement by the plaintiff and demanded an injunction as well as declaratory judgment on the rights of the parties. The allegation that the plaintiff was infringing has now been withdrawn.

The Bischof patent is on a take-up device for cables used on automobile brakes. The patent recited that such cables frequently stretch beyond the capacity of the usual screw and nut take-up mechanism at the ends and that when this happens a cable becomes slack and ineffective although still sound in structure. So Bischof proposed an attachable take-up device to make a stretched cable taut. The specification describes a small device with parallel walls spaced apart by fixed fillers at the lower ends, with a bolt or pin insertable through the walls at their top middle. The fillers and the bolt form three points of a triangle, with the bolt at the apex, and when the cable is looped so as to pass under the fillers and over the bolt it is detoured and shortened. In the specification the walls are described as arcuate in shape and the fillers as tapering upward, but it is also set forth that modifications in form and structure may be made without departing from the spirit and scope of the invention. Claims 4 and 5 of the patent are not limited to walls that are arcuate and to fillers that taper upward. Claim 5 is for a device "comprising a pair of parallel walls, said walls being mutually spaced apart to provide a slot therebetween, said walls having aligned holes extending therethrough substantially midway of the length of said walls and offset from the center with respect to the width of the walls, a bolt insertable through said holes, said slot being adapted to receive the loop of a cable therein with the apex of the loop lying against said bolt, and spacer members mounted between said walls on opposite ends thereof."

Claim 4 is practically the same. The commercial structure sold by the plaintiff follows the drawings and specification, except that the fillers or spacers are round instead of tapering upward. The Supco Company product claimed to infringe is like the plaintiff's, with the one difference that the walls are angular rather than arcuate.

[1-3] 1. Notwithstanding the general disability of an exclusive licensee to sue for infringement of patent without joinder of the owner of the patent as co-plaintiff, it is settled that an exclusive licensee in his own name may maintain a suit in equity against the owner of the patent in a case where the owner manufactures, uses or sells in violation of the right acquired by the licensee under the license. It is likewise settled that such a suit is one arising under the patent laws and may be brought in the district court, whatever the citizenship of the parties. Littlefield v. Perry, 21 Wall. 205, 22 L.Ed. 577; Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910; Walker on Patents, 6th Ed., section 450. The jurisdiction of the court and the standing of the plaintiff to bring the suit are thus too plain to admit of serious controversy. The argument that the plaintiff is a mere sales agent and not an exclusive licensee is altogether untenable.

2. The pleadings of the Supco Company do not raise the issue of validity of the Bischof patent. In fact the Supco Company in its counterclaim pleaded the patent and asked that the plaintiff be held to have infringed it. So the patent in this case is to be taken as valid, and the question whether an assignee of a licensor is estopped to deny validity of the patent in a suit brought by the licensee, the assignee having done nothing by way of recognition of the license, need not be decided.

3. We pass to the issue of infringement. The plaintiff relies on claims 4 and 5 of the patent. The Supco Company was doubtless at liberty to deny infringement of the Bischof patent, notwithstanding its present ownership of that patent, and was also entitled to introduce the prior art to show the limitations of the patent. But the prior art received in evidence does not in fact show that the Bischof device must be deemed limited to walls that are arcuate and to spacer members that are tapered. Claims 4 and 5 are not so limited in terms. They read squarely on the product put out by the Supco Company. Infringement must therefore be found in the plaintiff's favor.

4. It remains to consider the effect of the release and of the assignment given by the patentee to the Supco Company. It is plain that the assignment of the patent did not cut off the plaintiff's rights under the license. The assignment was ex-

pressly subject to that license and put the Supco Company on notice as to what the terms of the license were. Waterman v. Shipman, 2 Cir., 55 F. 982. The release, however, did operate as a discharge in favor of the Supco Company as to all damages and profits from infringement down to the time when the release was executed, and the release bound the present plaintiff as well as Bischof. It must be conceded that Bischof as owner of the patent had the right to bring suit for infringement, and that if the suit had been pushed to conclusion and Bischof had collected profits and damages, the payment of such damages and profits by the Supco Company to Bischof would have barred any claim for profits or damages by the present plaintiff against the Supco Company for the same acts of infringement; in such a situation the plaintiff might have looked to Bischof for redress but not to the Supco Company. So too a release given by the patentee for past infringement by a stranger is, in general at least, a discharge of any claims by an exclusive licensee as to such infringement. Jackson v. Allen, 120 Mass. 64; Marvel Carburetor Co. v. Carter, 281 Mich. 121, 274 N.W. 733.

The other matters raised by the Supco Company have been considered but are deemed too unsubstantial to call for discussion. The rights of the parties at the present time are these: the plaintiff has an exclusive license under the Bischof patent; the Supco Company owns the patent and has the rights of Bischof under the license, that is to say, the right to receive royalties and also the right to manufacture, use and sell in case the license shall cease to exist or shall cease to be an exclusive one; the plaintiff is entitled to an injunction against the further manufacture and sale by the Supco Company of the device now being sold by it; the plaintiff is also entitled to damages and profits for acts of infringement occurring after the date of the release; the Supco Company is entitled to the royalties paid into court and to any additional sums which should have been paid as royalties since the assignment of the patent to the Supco Company. There will be an accounting as to damages and profits and also as to the royalty payments, unless the parties come to an agreement on the proper figures. Findings and conclusions may be submitted.