# EXCELSIOR WOODEN PIPE COMPANY *v.* PACIFIC BRIDGE COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 375. Submitted February 3, 1902.—Decided May 5, 1902.

Where the decree of a Circuit Court and the order allowing an appeal both state that the bill was dismissed for want of jurisdiction, no separate certificate is necessary, and the appeal may be taken at any time within two years.

If a bill be brought to enforce or set aside a contract, though such contract be connected with a patent, it is not a suit under the patent laws, and the jurisdiction of the Circuit Court can only be maintained upon the ground of diversity of citizenship.

Although the bill be an ordinary bill for the infringement of a patent, of which the Circuit Court would have jurisdiction, if the answer show that it is really a suit upon a contract the court should dismiss the bill.

Where a bill is filed by a licensee (the license being set up merely to show the title of the plaintiff to the patent) against the patentee and another party to whom the patentee has granted a conflicting license, the jurisdiction of the court is not ousted by reason of allegations in the answer that the plaintiff had forfeited all his rights under the license by failure to comply with its terms and conditions, by reason of which the license had been revoked by the patentee.

THIS was a bill in equity filed by the Excelsior Wooden Pipe Company, a California corporation, against the Pacific Bridge Company, also a California corporation, but having a branch in the city of Seattle, Washington, and Charles P. Allen, for the infringement of a patent issued to Allen, one of the defendants, for a wooden pipe.

Beside the usual allegations of a bill for the infringement of a patent, the plaintiff averred that, prior to the acts charged against the respondents, the said Charles P. Allen, one of the defendants, had granted December 20, 1892, unto the Excelsior Redwood Company, a California corporation, the exclusive right within the Pacific States of manufacturing and selling wooden pipe under his patent to the full end of its term ; that the Ex-

celsior Redwood Company had, with the written consent of Allen, the patentee, on December 22, 1892, transferred unto the Excelsior Wooden Pipe Company, plaintiff, the said exclusive license to it, from Allen, with all rights and privileges thereunder, and that Allen had been, and still was, the exclusive owner of the patent, and the plaintiff the sole and exclusive licensee; that the plaintiff has ever since and still is engaged in the manufacture and sale of the patented articles, and has filled all orders therefor, and is well known as the exclusive licensee, and that Allen has joined with the plaintiff in suits against infringers of his patent, all of which have resulted in his favor. The gravamen of the bill lies in the allegation that, notwithstanding all this, the defendant, the Pacific Bridge Company, and the said Allen, have since such license conspired to make and sell, and without the license and consent of your orator, exclusive licensee as aforesaid, have made and sold, within one year last past, within the State of Washington, wooden pipe substantially the same as that described in the patent and embodying the invention; and therefore it brought this bill to recover damages for this infringement and for an injunction.

The answer, which was a joint one of both defendants, admitted the issue and validity of the patent and its ownership by defendant Allen. It is also admitted a license by defendant Allen to plaintiff's assignor, whereby the latter obtained the exclusive right to make and sell the patented articles in the territory described, and set out the license in full; but it denied that this license was a subsisting one, and alleged an abandonment of the same by the plaintiff, a forfeiture of all rights thereunder by failure and refusal to comply with its terms and conditions, and by acts of bad faith toward the patentee by seeking to defeat the patent and destroy its monopoly; and a revocation of the license by Allen for cause in pursuance of the terms of the contract. It also set up that after the alleged revocation of the license the defendant Allen granted a license to his joint defendant, the Pacific Bridge Company. In short, the only defence was a denial of the license which lies at the basis of plaintiff's suit, and constitutes its title to the patent.

The usual replication was filed, and, pending an application

on the part of defendants for an extension of time to take proofs, the plaintiff, apparently at the suggestion of the court, moved for a decree in its favor upon the pleadings and affidavits on file. Upon argument, which was upon the question of jurisdiction alone, the court held that the suit was not one arising under the patent laws, but solely out of a contract; that the court had no jurisdiction, and a decree was entered to that effect. Plaintiff thereupon appealed to the Circuit Court of Appeals, which dismissed the case upon the ground that it had no jurisdiction itself over the appeal, and that, as such appeal was prosecuted from an order dismissing the bill solely for want of jurisdiction, it should have been taken to this court. 109 Fed. Rep. 497. Whereupon the mandate of the Circuit Court of Appeals being filed in the Circuit Court, an appeal from the final decree of that court, which had been entered November 5, 1900, was taken to this court.

*Mr. N. A. Acker, Mr. L. S. Bacon, Mr. William F. Booth, Mr. W. W. Wilshire* and *Mr. A. H. Kenaga* for appellant.

*Mr. James B. Howe, Mr. A. R. Titlow* and *Mr. W. G. Bogle* for appellees.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

1. Motion is made by defendants to dismiss this appeal upon the ground that no appeal was taken, and no certificate of the trial court upon the question of jurisdiction, was made by such court during the term at which the decree was rendered; and that no such certificate has since or ever been made.

As the appeal was taken directly to this court, it must appear, under the fifth section of the Court of Appeals act, either that the question of jurisdiction was certified to this court, or that the decree appealed from shows upon its face that the sole question decided was one of jurisdiction. Plaintiff evidently supposed that the case was a proper one to carry to the Court of Appeals, but its appeal having been there dismissed, it took this

appeal May 27, 1901, from the original decree of the Circuit Court made November 5, 1900. This decree, after reciting "that said suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of this court, and that this court should not further exercise jurisdiction, it is therefore ordered and decreed that said suit be and the same is hereby dismissed for want of jurisdiction." An appeal was taken from this decree, and the order allowing the appeal states that the appeal was allowed " from the final order and decree dismissing said suit for want of jurisdiction." This is clearly a sufficient certificate of the Circuit Court that the jurisdiction of that court was in issue, and the only question to be considered by us relates to the jurisdiction of that court. *Shields* v. *Coleman*, 157 U. S. 168; *In re Lehigh Mining Co.*, 156 U. S. 322; *Huntington* v. *Laidley*, 176 U. S. 668.

The case, being thus in proper condition for appeal, such appeal could be taken at any time within two years. *Allen* v. *Southern Pacific Railroad*, 173 U. S. 479; *Holt* v. *Indiana Manfg. Co.*, 176 U. S. 68.

2. The most important question is whether this is a suit under the patent laws of the United States within the meaning of Rev. Stat. sec. 629, sub. 9, which grants original jurisdiction to the Circuit Courts " of all suits at law or in equity arising under the patent or copyright laws of the United States." The rule is well settled that, if the suit be brought to enforce or set aside a contract, though such contract be connected with a patent, it is not a suit under the patent laws, and jurisdiction of the Circuit Court can only be maintained upon the ground of diversity of citizenship. But difficulties sometimes arise in determining whether the action be upon a contract or upon the patent. The first case involving this question was *Wilson* v. *Sandford*, 10 How. 99, in which a bill filed on the equity side of the Circuit Court by the assignee of a patentee, to set aside a contract in the nature of a license upon the ground that the licensee had not complied with the terms of the contract, was held not to be a case under the patent laws. The object of the bill was to have the license set aside and forfeited, and plaintiff's title reinvested in him. Such was also the case in *Brown* v. *Shannon*,

20 How. 55, which was a bill to enforce the specific execution of certain contracts respecting the use of the patent; and in *Albright* v. *Teas*, 106 U. S. 613, which was a suit brought by the plaintiff for moneys alleged to be due under a contract whereby certain letters patent granted to him were transferred to the defendant. This was clearly a bill to recover royalties, and no question under the patent laws was involved. *Dale Tile Manfg. Co.* v. *Hyatt,* 125 U. S. 46, was an action in a state court by the owner of the patent upon an agreement by which such owner granted an exclusive license to make and sell the patented articles within a certain territory. Defendant expressly acknowledged the validity of the patent. This, we held to be, clearly within the jurisdiction of the state court. A like ruling was made in the next case of *Felix* v. *Scharnweber*, 125 U. S. 54. In the same line of cases are those of *Marsh* v. *Nichols*, 140 U. S. 344, to enforce the specific performance of a contract to transfer an interest in a patent to the plaintiff; *Wade* v. *Lawder*, 165 U. S. 624; and *Pratt* v. *Paris Light & Coke Co.*, 168 U. S. 255, which was an action by patentees in a state court upon the common counts to recover of the defendant the stipulated price for manufacturing and setting up an apparatus for the manufacture of water gas. Defendant pleaded that the plaintiff had agreed to save it harmless against any suit which might be brought against it for infringement, and to defend such suits at their own expense, and averred, among other things, that the patents were void and an infringement upon prior patents; that defendant had not kept plaintiffs harmless against such suits, but had refused to defend a certain suit brought against it, and that the defendant had rightfully rescinded the contract. It was held that the action was not one arising under the patent laws of the United States, and that to constitute such a cause the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction or sustained by the opposite construction of those laws. That " section 711 does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of *cases* arising under those laws. There is a com-

plete distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals."

Now, as the bill in this case differs from an ordinary bill for infringement only in the fact that the suit is by a licensee against two defendants, one of whom is the licensor and owner of the patent, and the license is set forth only for the purpose of showing title, there would be no difficulty whatever in sustaining it, were it not for the question whether we are not also bound to consider the averments of the answer. We think this difficulty is practically settled by a reference to section 5 of the Jurisdictional Statute of 1875, 18 Stat. 470, 472, which provides "that if, in any suit commenced in a Circuit Court, . . . it shall appear to the satisfaction of the said Circuit Court, *at any time after such suit has been brought,* . . . that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, . . . the said Circuit Court shall proceed no further therein, but shall dismiss the suit," etc. While it seems reasonable to say that a jurisdiction once acquired by the filing of a proper bill ought not to be taken away by any subsequent pleading, the statute is peremptory in this particular, and requires the court to dismiss the case whenever *at any time* it shall appear that its jurisdiction has been improperly invoked. We are by no means without authority upon this question. In *Robinson* v. *Anderson,* 121 U. S. 522, it was held that when it appeared, after all the pleadings were filed, that the averments in the declaration which alone gave the court jurisdiction, were immaterial and made for the purpose of creating a case cognizable by the court, it was the duty of the Circuit Court to dismiss the bill for want of jurisdiction. Said the Chief Justice : " Even if the complaint, standing by itself, made out a case of jurisdiction, which we do not decide, it was taken away as soon as the

answers were in, because if there was jurisdiction at all it was by reason of the averments in the complaint as to what the defences against the title of the plaintiffs would be, and these were of no avail as soon as the answers were filed and it was made to appear that no such defences were relied on." In *Williams* v. *Nottawa*, 104 U. S. 209, this court went so far as to dismiss a case in which judgment had been rendered for the plaintiff in the Circuit Court, because it appeared from the testimony of the plaintiff that certain bonds were put in his hands for collection in which he had no real interest. It was held that it was the duty of the Circuit Court on its own motion, as soon as the evidence was in and the collusive character of the case shown, to stop all further proceedings and dismiss the suit, the Chief Justice further remarking that this proviso of the act of 1875 was a salutary one, and that it was the duty of the Circuit Courts to exercise their power under it in proper cases. See also *Wetmore* v. *Rymer*, 169 U. S. 115; *Morris* v. *Gilmer*, 129 U. S. 315; *Lake County Commissioners* v. *Dudley*, 173 U. S. 243.

Is there anything in the answer to show that the court was bound to dismiss the bill for want of jurisdiction?

The bill makes the usual allegations of a bill for infringement, and puts in issue (1) the title of the plaintiff, which in this case was a license from one of the defendants, fully set forth in the margin;[1] (2) the validity of the patent; and

---

"[1] *License and Agreement.*

"This agreement, made this 11th day of March, 1893, by and between Charles P. Allen, of Denver, Colorado, party of the first part, and the Excelsior Redwood Company, a corporation duly organized and existing under and by virtue of the laws of the State of California, and having its principal place of business in the city and county of San Francisco in said State, party of the second part:

"Witnesseth: That, whereas, the party of the first part is the owner and holder, for, to and in the States and Territories hereinafter mentioned, of the whole right, title and interest in and to letters patent of the United States, No. 359,590, dated March 22, 1887, for 'wooden pipe.'

"And, whereas, the party of the second part is desirous of obtaining for, to and within the said States and Territories hereinafter mentioned an exclusive right, license and privilege to manufacture and sell wooden pipe under and in accordance with said letters patent:

(3) the infringement. The answer raises no issue as to the validity of the patent, or as to the acts charging infringement. It admits the license, but denies that it is a subsisting one, and pleads abandonment of the same by plaintiff, a forfeiture of all rights thereunder by failure to comply with its terms and conditions, and by acts of gross bad faith towards the patentee by seeking to defeat the patent, and a revocation of the license by Allen. It will be observed that the answer raises no question of the construction of the license, but merely of its existence— that is, of the title of the plaintiff to sue. Before deciding that these allegations oust the jurisdiction of the court it must at least appear that the plaintiff has another remedy by an action in a state court. But what remedy has it? All the

---

"Now, therefore, the parties have agreed as follows: The party of the first part hereby grants, subject to the conditions hereinafter stated, unto the party of the second part, its successors and assigns, the exclusive right, license and privilege, within the States of northern California, Oregon, Washington, Nevada, Montana and Idaho, and Territories of Arizona and Utah, of manufacturing and selling wooden pipe under and in accordance with the said letters patent, to the full end of the term of said letters patent.

"The party of the second part agrees to pay unto the party of the first part, as a license fee or royalty under this license and agreement, the following sums to wit: One dollar ($1.00) on every one thousand feet, board measure, of lumber employed in the manufacture of said pipe, and two and one-half per cent ($2\frac{1}{2}$ per cent) on the cost at factory of all steel and iron used in said manufacture.

"The said license or royalty is to be paid by the said party of the second part to the said party of the first part upon the final payment to the party of the second part of the contract price on each and every contract taken by said party of the second part, involving the manufacture and sale of said patented wooden pipe. The right, license and privilege hereby granted is not transferable or assignable, either in whole or part, by the party of the second part, without the consent of the party of the first part. It is agreed that in case the party of the second part shall fail to use the above-described patent in any pipe constructed by them, of twelve (12) inches diameter and upwards, or from any cause the said party of the second part shall cease the manufacture of wooden pipe, then and in that event all rights and privileges granted by this agreement and license to the said party of the second part shall at once be revoked.

"It is understood and agreed that this agreement is binding upon the heirs, legal representatives and assigns of the party of the first part, and upon the successors and assigns of the party of the second part."

agreements and conditions of the license are such as are made
by the plaintiff's assignor, the Excelsior Redwood Company.
This company, the party of the second part, agrees *first*, to
pay a licensee fee or royalty, the time of payment being fixed
in a subsequent sentence; *second*, that it will neither transfer
nor assign the license without the consent of the patentee, (it
was admitted that the patentee consented to the assignment
to plaintiff); *third*, that in case the licensee should fail to use
the patent in any pipe constructed by them, or from any cause
it should cease to manufacture a wooden pipe, the license shall
be at once revoked. The only clause in the license in which
the patentee appears as promisor is that wherein " he hereby
grants, subject to the conditions hereinafter stated, unto the
party of the second part, its successors and assigns, the exclu-
sive right, license and privilege within " certain States " of man-
ufacturing and selling wooden pipe under and in accordance with
the said letters patent to the full end of the term of said letters
patent."

Now, it may be freely conceded that, if the *licensee* had
failed to observe any one of the three conditions of the license,
the *licensor* would have been obliged to resort to the state courts
either to recover the royalties, or to procure a revocation of the
license. Such suit would not involve any question under the
patent law.

But the same does not hold good with respect to the *licensee*.
There were practically but two ways in which the patentee
could impair the grant he made to the licensee, and those were
by a revocation of the license by a bill in equity, or by treating
it as abandoned and revoked, and granting a license to another
party. He elected the latter remedy, and made a contract with
the Pacific Bridge Company to make and sell wooden pipe
within the same territory. A suit in a state court would either
be inadequate or would involve questions under the patent law.
If the licensee sued at law he would be obliged to establish the
fact that the patent had been infringed, which the patentee
might have denied, and in any case could only recover damages
for past infringements. If he sued in equity, he could only pray
an injunction against future infringements; but this is exactly

what he prays in this case, and thereby raises a question under the patent laws. In either case the patentee could defeat the action by showing that he did not infringe,—in either case the defendant could so frame his answer as to put in issue the title, the validity or the infringement of the patent.

The natural and practically the only remedy, as it seems to us, was for the plaintiff to assert his title under the license and to prosecute the defendants as infringers. In doing this he does what every plaintiff is bound to do, namely, set forth his title either as patentee, assignee or licensee, and thereby puts that title in issue. The defendant is at liberty in such a case to deny the title of the plaintiff by declaring that the license no longer exists, but in our opinion this does not make it a suit upon the license or contract, but it still remains a suit for the infringement of a patent, the only question being as to the validity of plaintiff's title. There can be no doubt whatever that if the plaintiff sued some third person for an infringement of his patent, the defendant might attack the validity of his license in the same way, but it would not oust the jurisdiction of the court. Why should it do so in this case?

Much reliance is placed upon the case of *Hartell* v. *Tilghman*, 99 U. S. 547, which was a bill by a *patentee* against one with whom he had made a contract in the nature of a license, alleging that defendants, after paying the royalty for several months, refused to do certain other things which he charged to have been a part of the contract, and thereupon he forbade them further to use his patented process, and charged them as infringers. Defendants pleaded the contract as they understood it, and the tender of all that was due plaintiff under it, and their readiness to perform it.

Plaintiff's case was that there was a verbal agreement that he should prepare and put up his patented mechanism in defendants' workshop, and that after this was done defendants should take a license for the use of the invention. The machinery was put up, but defendants refused to sign the license apparently upon the ground that the patentee claimed the right to visit the works of the defendants, and inspect their books with a view to ascertaining the amount of work done. The dispute was as

to the terms of the agreement, defendants insisting that they had never proposed to accept the license with the conditions mentioned. It was held that the patentee could not sue the defendants for an infringement, and in answer to the objection that he had no other remedy Mr. Justice Miller observed that he could establish his royalty once every year, and sue at law and recover every month or every year for what was due, and that, if he desired to assert his right of examining the works of the defendants, he could in a proper case compel them to submit to the examination. The case is the converse of the one under consideration, inasmuch as it was a suit by the patentee against the licensee for a violation of his contract, and, as the court observed, the plaintiff might have brought suit for royalties. As already said, the *patentee* might have done the same in this case, if he had sought to enforce his contract.

Much more nearly analogous to the case under consideration and practically upon all fours with it is that of *Littlefield* v. *Perry*, 21 Wall. 205. This was a suit by an assignee against the patentee, who had made a conveyance to the plaintiff of his patent with all improvements thereon, within certain States, for which plaintiff had agreed to pay royalty upon all articles sold, with a clause of forfeiture in case of non-payment or neglect after due notice, to make and sell the patented articles to the extent of a reasonable demand therefor. There was by a supplementary document an agreement reserving to the patentee the right to apply the principle of his invention to one special purpose. It was held that whether the plaintiff was an assignee or a licensee, he had a right to maintain a suit for infringement in his own name in a Federal court against the *patentee*. Said the Chief Justice: " They," the plaintiffs, " certainly had the exclusive right to the use of the patent for certain purposes within their territory. They thus held a right under the patent. The claim is that this right has been infringed. To determine the suit, therefore, it is necessary to inquire whether there has been an infringement, and that involves a construction of the patents, . . . such a suit may involve the construction of a contract as well as of a patent, but that will not oust the court of its jurisdiction. If a patent is involved, it carries with it the whole case."

Upon the subject of a licensee suing his own patentee the Chief Justice observed : " A mere licensee cannot sue strangers who infringe. In such cases redress is obtained through or in the name of the patentee or his assignee. Here, however, the patentee is the infringer, and, as he cannot sue himself, the licensee is powerless, so far as the courts of the United States are concerned, unless he can sue in his own name. A court of equity looks to the substance rather than form. When it has jurisdiction of parties it grants the appropriate relief without regard to whether they come as plaintiff or defendant. In this case the person who should have protected the plaintiff against all infringements has become himself the infringer."

*White* v. *Rankin*, 144 U. S. 628, was a bill by a patentee for infringement, to which there was answer setting up an agreement between the plaintiff and one of the defendants to assign to him an interest in the patent on certain conditions, which it was alleged were performed, and certain other matters which it was alleged gave the defendants the right to make, use and sell the patented invention. The case was tried upon a stipulation admitting that defendants had made and sold the patented inventions, and that a certain written agreement between the plaintiff and one of the defendants had been made as above stated. The Circuit Court entered a decree dismissing the bill, which was reversed by this court. " It " (the court) " appears," said Mr. Justice Blatchford, " to have dismissed the bill on the simple ground that the defendant set up a contract of license from White. The bill being purely a bill for infringement, founded upon patents, what was set up by the defendants was set up as a defence and as showing the lawful right in them to do what they had done, and as a ground for the dismissal of the bill because they had not infringed the patents." The decree was not one upon the facts of the case, but was simply a decree that the court had no jurisdiction to try the case. The subject-matter of the action, as set forth in the bill, gave the court jurisdiction, and exclusive jurisdiction, to try it. All of the parties to the suit were citizens of California, and if jurisdiction did not exist under the patent laws it did not exist at all. " The Circuit Court found nothing as to the existence or

validity of the contract, decree or deed mentioned in the stipulation. The stipulation provides that at the hearing the contract, complaint, answer, decree and deed set forth in the stipulation may be offered in evidence, subject to such objections as might be urged against the originals thereof. The stipulation further states that the defendants do not admit that anything is due to the plaintiff from Thompson, and that they do admit that nothing had been paid by Thompson to the plaintiff under the decree of the state court of August 26, 1884, and since the making thereof. All these matters and questions ought to have been adjudicated by the Circuit Court before it could find ground to determine whether or not it should dismiss the bill. Until it had so adjudicated those questions the decision in the case of *Hartell* v. *Tilghman* could not apply."

The cases in the Circuit Courts and Courts of Appeal are too numerous to be analyzed, or even cited. One of the most recent and satisfactory is that of the *Atherton Machine Co.* v. *Atwood-Morrison Co.*, 102 Fed. Rep. 949, in which it was broadly held that a suit in which the relief sought is an injunction and a recovery of damages for the infringement of a patent is one arising under the patent laws of the United States, although it incidentally involves a determination of the question of the ownership of the patent, which was claimed by both complainant and defendant under separate assignments from the patentee. All the cases cited herein are reviewed and the jurisdiction sustained.

The difficulty with the defendant's position in the case under consideration is that it apparently leaves the plaintiff without an adequate remedy. Defendant has broken no express covenant of the contract, since it has made no covenant. It has simply ignored the existence of the contract and granted a license to another party. It is difficult to see what remedy is available to the plaintiff in a state court that would not involve the right of the defendant to use the patent. In other words, it would be an ordinary suit for infringement in which the Federal courts would alone have jurisdiction. Whether it sued at law or in equity, its damages would be such as are

usual in cases of infringement, and the only injunction it could obtain would be against the further use of the invention.

In any suit that could be brought the title of the plaintiff to sue must be put in issue, and, that being the title to the patent, is put in issue in every suit for infringement. We held in *Pratt* v. *Paris Light & Coke Co.*, 168 U. S. 255, with respect to an action in a state court, which involved the question whether the patents were void and an infringement upon prior patents, that this did not necessarily oust the state court of its jurisdiction; and by parity of reasoning we hold in this case that the mere fact that the suit may involve the existence of the license does not oust the court of jurisdiction of a suit for the infringement of a patent.

While we do not intend to allow the jurisdiction of the Federal courts to be invoked primarily for the determination of the respective rights of parties to a contract concerning patents, yet when the bill is an ordinary one for an infringement and the answer puts in issue the title of the plaintiff to sue, we think the jurisdiction is not ousted by the mere allegation that the license has been revoked and that the court is at liberty to go on and determine that fact. We regard this question as conclusively settled in *Littlefield* v. *Perry*, 21 Wall. 205, and *White* v. *Rankin*, 144 U. S. 628, and have no disposition to disturb it.

The decree of the Circuit Court is, therefore,

*Reversed, and the case remanded for further proceedings consistent with this opinion.*

Mr. Justice Gray did not sit in this case or participate in the decision.