**AUTOMOTIVE PRODUCTS CORPORATION v. WOLVERINE BUMPER & SPECIALTY CO. et al.**

(Circuit Court of Appeals, Sixth Circuit. November 4, 1926.)

No. 4400.

**1. Action ⬬16.**

Proceeding to determine rights involving specific property is or may be in rem, but one involving mere rights is in personam.

**2. Patents ⬬288—Federal court held to have jurisdiction of subject-matter of patent license, in infringement suit by licensee, joining patentee, against nonresident defendant claiming under subsequent licensee.**

Federal court *held* to have jurisdiction of subject-matter of patent license in infringement suit by licensee joining patentee, against nonresident defendant claiming under subsequent licensee, since patent rights generally attend person of patentee.

**3. Patents ⬬291.**

In infringement suit in federal court by licensee of patent against nonresident defendant, valid decree cannot be based solely on substituted service, under Judicial Code, § 57 (Comp. St. § 1039).

**4. Courts ⬬278.**

Federal court's jurisdiction of patent infringement suit on ground that it involves federal question is not ousted by disclosure of dispute as to title to patent.

**5. Courts ⬬264(1)—Where federal jurisdiction is extended to ancillary controversy, it is not controlling that latter proves to be more important.**

Where federal jurisdiction conferred by original bill is extended to ancillary controversy, not originally there cognizable, it is not controlling that collateral dispute proves to be the more important.

**6. Patents ⬬290—In patent infringement suit by licensee, subsequent licensee, under whom defendant claimed, held properly brought into record, though its intervening petition interjected no substantially new issue.**

In patent infringement suit by licensee, subsequent licensee, under whom defendant claimed, *held* properly brought into record, so as to be bound by decree, though its intervening petition interjected no substantially new issue, since its rights were those of patentee, who was party by plaintiff's selection.

**7. Courts ⟨⟩347—General prayer for affirmative relief in answer held sufficient, in absence of special demurrer (equity rule 30).**

General prayer for affirmative relief in answer, permitted by equity rule 30, is sufficient to support decree for appropriate specific relief, where there is no special demurrer on account of absence of specific prayer.

**8. Dismissal and nonsuit ⟨⟩24.**

Plaintiff *held* not entitled to dismissal without prejudice as against any party, where one adverse party had sufficient basis for getting affirmative relief.

**9. Patents ⟨⟩214.**

Where licensee of patent, which was to manufacture and sell device, transferred rights to another, patentee *held* authorized to revoke license.

**10. Patents ⟨⟩311.**

In action for patent infringement by licensee, rights depending on situation existing before revocation of license *held* not within issues.

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Patent infringement suit by the Automotive Products Corporation against the Wolverine Bumper & Specialty Company, in which Rollie B. Fageol was made a party complainant, and the American Chain Company, Inc., filed an intervening petition. Plaintiff's motion to dismiss was overruled. From an adverse decree, it appeals. Amended and affirmed.

Ralph M. Shaw and Geo. L. Wilkinson, both of Chicago, Ill. (John C. Slade, of Chicago, Ill., and Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., on the brief), for appellant.

Frederick S. Duncan, of New York City (Cyrus W. Rice, Rice & Rice, and Earl W. Munshaw, all of Grand Rapids, Mich., on the brief), for appellees.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. Fageol, a citizen of California, as patentee, gave an exclusive license to the Automotive Company, a California corporation. It did not contain any express power of revocation. After a period of inaction by the licensee, Fageol insisted that he was no longer bound. Later he transferred rights under the same patent to the American Chain Company, a corporation of New York. Later he and this company began a suit in a California state court of general equity jurisdiction, making the Automotive Company defendant, and seeking both a decree that the first license be rescinded by the court for reasons alleged and a decretal declaration that it was already ineffective.

Before filing its answer, the Automotive Company brought this suit in the court below against the Wolverine Company, alleging infringement of the specified patent, setting up that it was the exclusive licensee, and making Fageol a party complainant, upon the theory that, as exclusive licensee, it must and could join him as plaintiff, without or even against his consent. The defendant, the Wolverine Company, answered with the usual defenses in infringement cases, and also denied that the Automotive Company had any existing license, and alleged that the Wolverine Company was manufacturing under a license from Fageol, through the American Chain Company. Fageol also appeared by petition (later adopted as an answer by him), alleging that the license to the plaintiff had been invalid and completely revoked, that the plaintiff had no rights in the subject-matter, and that he had later executed a license to the American Chain Company, which, under authority of its contract, had licensed the Wolverine Company. The American Chain Company also filed an intervening petition setting up substantially the same things.

Upon the hearing, and before any order had been made, the plaintiff moved to discontinue and dismiss the case. This motion was overruled, and a decree was entered dismissing the original bill, and adjudging upon the merits of the controversy that Fageol's license to the plaintiff had been effectively revoked, and that Fageol and the American Chain Company were the owners of all rights in and under the patent. Plaintiff appealed from this decree. Its contentions are:

(1) That the California court had exclusive jurisdiction of the subject-matter of the license.

(2) That the substantial matter involved was the existing validity of plaintiff's license, and that this was not a controversy arising under federal laws and of which the court had jurisdiction.

(3) That plaintiff had the right to dismiss its case before decree, or, at least, that to refuse to allow it to do so was an abuse of discretion.

(4) That upon the merits of the title controversy plaintiff was right, as well as upon the merits of the more strictly patent questions.

[1-3] 1. We cannot regard the decision of the California state court as a proceeding in rem. Though in a broad sense rights are property, yet, in defining suits in rem, we

must distinguish those involving specific property or status and those involving mere rights. The latter are in personam; the former are or may be in rem. The exclusive right or monopoly granted by patents normally attends the person of the patentee, like other intangibles, and there was nothing in the present situation to take the case out of the normal rule. Our most recent discussion of this question is found in Brown v. Duffin (C. C. A.) 13 F.(2d) 708. Applying the test there suggested, it will hardly be claimed that, in a suit brought in a federal court against a nonresident defendant by the patentee to declare revoked, or by a licensee to declare in force, a patent license, a valid decree could be based solely upon substituted service under section 57 of the Judicial Code (Comp. St. § 1039). Grable v. Killits (C. C. A. 8) 282 F. 185.

It is true, as was said in Denison Co. v. Chicago Co. (C. C. A.) 286 F. 818, there are exceptions to the rule that tangible property must be involved in order to find that a suit is in rem. A status, like marriage, was referred to as an example of exceptions; but the existence of a mere contract right under a patent, and the issue, whether revoked or not, cannot be one of them.

[4, 5] 2. The jurisdiction of the court below as a federal court was initially completely made out by the citizenship of the Automotive Company and Fageol in California and of defendant in Michigan. However, it has now appeared that, if the parties were aligned according to the real controversy existing on the title subject, Fageol was a defendant, and hence diverse citizenship becomes at least an unsatisfactory basis upon which to rest federal jurisdiction. However, such jurisdiction was otherwise complete, as involving a federal question. The plaintiff alleged a valid patent, sufficient title thereto, and infringement. If plaintiff's claim of title was correct, defendant had the right to deny, as it did, both validity and infringement. Under such conditions, jurisdiction over a patent controversy is not ousted by the disclosure of a dispute about the title, even when such disclosure is made by the bill, much less when interjected by defendants. In Lowry v. Hert (C. C. A.) 290 F. 876, 878, we considered the leading cases up to that time, and doubts are now foreclosed by the Supreme Court opinion in Luckett v. Delpark (April 12, 1926), 270 U. S. 496, 46 S. Ct. 397, 70 L. Ed. 703. Where the federal jurisdiction conferred by the original bill is extended to an ancillary controversy not originally there cognizable, it is not controlling that the collateral dispute turns out to be more important and takes the center of the stage. Vogue Hat Co. v. Vogue (C. C. A. 6) 12 F.(2d) 991, 992.

[6] If the intervening petition of the American Chain Company had interjected a substantially new issue, the propriety of that intervention, and of any relief granted thereon, would call for examination (Wenborne v. Dort [C. C. A. 6, July 10, 1926] 14 F.[2d] 378); but Fageol had been a party by plaintiff's selection, and the American Chain Company merely stood in his shoes. Since he could be heard upon the complete issue presented by the bill and his answer, and, since the American Chain Company was an interested party under him, it was quite fittingly brought upon the record, in order that it might be bound by the decree. The plaintiff would be content with this intervention, if the result had been the other way.

[7, 8] 3. The general right of a plaintiff to dismiss his action without prejudice was broadly upheld in Ex parte Skinner, 265 U. S. 93, 44 S. Ct. 446, 68 L. Ed. 912; but the same decision points out that the right does not extend to an equity case where the defendant has, by cross-petition, claimed affirmative relief. By equity rule 30, cross-bills have become unnecessary and appropriate allegations and prayers in the answers are substituted. In the present case the answer of the Wolverine Company and the intervening petitions of Fageol and the American Chain Company concluded in each case with a prayer that the bill of complaint be dismissed "and that this defendant may be granted [may have] such other and further relief as to the court may seem meet and proper in the premises." This concluding prayer had no place in a defensive answer. It creates a situation precisely analogous to a bill of complaint which alleges facts entitling plaintiff to a specific relief upon a certain subject-matter, but, as to that matter, asks only general relief. It is familiar that, lacking a special demurrer on account of the absence of specific prayer for relief, such general prayer is sufficient to support a decree for the appropriate specific relief, even without the amended prayer to that effect, which is often rightly allowed to be added at the hearing. Since Fageol had a sufficient pleading basis for getting affirmative relief, there was no error in denying plaintiff's right to dismiss the bill as against him, Fageol; and, if that denial was rightful, no harm came from the extension of the same denial as to other parties.

[9] 4. Upon the merits, the court below was right. For the purposes of this opinion we may concede, without deciding, that the typical patent license contract is not revocable by the licensor unless it contains a provision to that end, and that Fageol's early insistence that the license was invalid, or revoked, was unsound. His right does not stand on that situation. The license contract from Fageol to the Automotive Company was made March 25, 1920. In our opinion it did not contemplate the granting by the Automotive Company of any license or sublicense to sell. It contemplated rather that the Automotive Company would manufacture, or have the manufacturing done for it, and would then itself sell the device. It had power to accept royalties by way of settlement with infringers, but not otherwise. It agreed to market the bumpers under the name "Fageol," to use its best efforts to promote the sale, and to maintain at its expense a sufficient number of traveling men adequately to push the sales throughout the United States. It agreed to gives the licensor one-eighth of the profits; and this plainly contemplated manufacturing and selling profits rather than merely royalty profits (except in cases of infringement settlement).

On April 18, 1923, the Automotive Company granted to the Stewart-Warner Company "the full and exclusive right and privilege of manufacturing [and selling][1] at any place in the United States and territories thereof, and throughout the world, so far as the licensor has power under the license which it holds from said Fageol to grant such a license in countries foreign to the United States, bumpers embodying the invention of said letters patent."

Clearly, by this contract, the Automotive Company disables itself from carrying out essential parts of its obligations under the original license contract. This was not necessarily an effective abandonment or rescission of that contract; but it was in the nature of an anticipatory breach. It was a declaration that the Automotive Company did not intend to carry out its contract to manufac-

[1] The printed record omits these words. From other parts of the contract the intent seems clear, and counsel so assume.

ture, sell, maintain salesmen, etc. Fageol might have insisted that this new license on April 18, 1923, was invalid and that the original contract must be fulfilled, and might have claimed damages for breach; but, when knowledge of this later arrangement came to Fageol, it was a tender to him by the Automotive Company of rescission and abandonment, at least, a tender of the right of rescission because of abandonment, and he accepted that tender by his notice of April 28, 1923, stating that for various reasons, and, among others, "all obligations thereunder have been abandoned by you, the license of March 28, 1920, is hereby terminated." It is this last action by Fageol which is sufficient of itself (though, if disputed, contingent, upon a later judicial determination of the existence at that time of the essential facts) to put an end to the license rights of the Automotive Company and to show that when it filed this bill in August, 1923, it had no sufficient title to or interest in the patent, but that the entire rights therein then were vested in Fageol or those claiming under him, adversely to the Automotive Company.

[10] The decree below ended the existing contingency as to the rightfulness of Fageol's rescission and properly declared the inability of plaintiff to maintain the suit and the fact of the termination of the plaintiffs' license before suit commenced, as well as the fact that all title to the patent was then vested in Fageol and the American Chain Company. Paragraph 3 of the decree included "all claims for profits and damages for past infringement" in the declaration of ownership by Fageol and the American Chain Company. So far as claims for past infringement or other rights of the parties depended upon the situation existing before April 28, 1923, when at the latest, as we find, plaintiffs' rights terminated, they do not seem to have been within the issues heard and considered by the court, and they are only remotely connected with the controversy which gives federal jurisdiction. We think that clause should be stricken from the decree, and nothing upon that subject should be regarded as concluded by this litigation.

In all other respects the decree is affirmed.