Common Pleas Court of Franklin County.

THOMAS W. RUFF V. CARMI A. THOMPSON ET AL., COMPRISING THE STATE OFFICE BUILDING COMMISSION.

Decided January 14, 1932.

*Vorys, Sater, Seymour & Pease; Taft, Stettinius & Hollister,* for plaintiff.

*Gilbert Bettman,* Atty. Gen'l., *E. C. Shively,* First Ass't. Atty. Gen'l., *Wm. J. Ford,* Ass't. Atty. Gen'l. for defendant The State Office Building Commission.

*Smith W. Bennett, Harry Frease* and *Lynch, Day, Pontius & Lynch,* for defendant United Metal Products Company.

LEACH, J.

The gist of the petition is that the successful bidder, the United Metal Products Company, furnished samples for their base bid and that said samples were infringements of certain enumerated United States Letters Patent known as Hauserman Patents; that said successful bidder was not licensed to use said patents; that the State Office Building Commission, by entering into said contract, did thereby infringe said patents and made itself liable to the owners of such patents for damages; that said Commission was wholly without right or authority to enter into such contract in violation of Letters Patent of the United States, and to do so was contrary to law. Entering into said contract was illegal and such contract was void and will result in an unlawful expenditure of the money of the taxpayers of Ohio.

The supplement or amendment to the petition alleges that the sample submitted by the successful bidder was not assembled, or submitted in accordance with the specifications.

This case naturally falls under two sub-divisions: First, the patent question and second, the question as to the sample submitted. It is claimed on the one hand and denied upon the other that this is a case arising under the patent laws, and it is admitted that if it is a case arising under the patent laws, the Federal Courts have exclusive jurisdiction.

On behalf of the plaintiff it is contended that "Where the case arises as a matter of contract and where the

relief sought includes a case of state recognizance, the matter is not exclusively Federal, even though some essential fact bearing upon the ultimate facts to be proved is the validity or infringement of the United States Letters Patent." Counsel for plaintiff further state, on page 4, of their brief, "We have not asked for an injunction against infringement, although infringement is an essential fact that must be passed on in connection with the establishment of the plaintiff's case."

In *Henry* v. *Dick*, 224 U. S. page 16, the Court uses this language:

"The test of jurisdiction is this: Does the complainant 'set up some right, title or interest under the patent laws of the United States, or make it appear that some right or privilege will be defeated by one construction, or sustained by another, of those laws?' *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.*, 185 U. S., 282; *Pratt* v. *Paris Gaslight & Coke Co.*, 168 U. S., 255, 259; *White* v. *Rankin*, 144 U. S., 628."

The distinction between Federal and State jurisdictions is reviewed at length in *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.*, 185 U. S. 282, where numerous cases are reviewed and to which reference is here made. In that case the court at pages 286 and 287 of the opinion used the following language:

"* * * that to constitute such a cause (one arising under the patent laws of the United States) the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction or sustained by the opposite construction of those laws. That 'Section 711 does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of cases arising under those laws. There is a complete distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the parent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals."

Thus it has been held that actions for the specific execution of a contract for the use of a patent, or other suits where a subsisting contract is shown governing the rights of the party in the use of an invention, that such suits not only may but must be brought in the state courts.

Nice distinctions have arisen as to whether or not particular cases simply involved questions arising under the patent laws or whether such controversies were cases arising under those laws. In the case at bar, as admitted by the plaintiff in its brief, "infringement is an essential fact that must be passed on in connection with the establishment of the plaintiff's case." If there is no infringement there can be no possible claim of illegality of the action of the State Building Commission insofar as this patent question is concerned. It would seem to this court, therefore, that this is a case arising under the patent laws, but whether this conclusion be correct or not, we do not believe that is the basic question here involved. Assuming that the plaintiff would be able to establish its claim as to the validity of the patents set forth in the petition and the infringement thereof by the defendant, under such circumstances would the letting of the contract to the successful bidder here be illegal?

"An infringement of a patent is a tort or wrong; it is a trespass upon the property rights of the patentee, or at least it is analogous to a trespass." 48 C. J. 292.

We know of no decision holding that a governmental body may not let a contract for a construction involving a patent claimed to be infringed. The one case cited is *Attorney General* v. *City of Detroit*, 26 Mich., 263, the syllabus of the case being:

"Whether, where there are two bidders for the same patented pavement, the common council have the right to reject the lowest bid on the ground that the persons making it, having no right under the patent to lay it, are not responsible bidders; nevertheless, they have filed a bond of indemnity, as required by resolution of the council, and to contract with the next higher bidders who were the owners of the patent: Quaere?

Campbell, J., holding the affirmative; Christiancy, Ch.J., the negative, and Cooley, J., reserving his opinion."

The petition shows on its face that none of the bidders were licensed to use said Hauserman patents except the Globe-Wernicke Company, E. F. Hauserman and United Supplies Company. Why is the court to assume that the Globe-Wernicke Company and the United Supplies Company having been licensed, that it is not the intention of the United Metal Products Company, the successful bidder, to obtain a license? There are no allegations in the petition that the successful bidder will not make effort to obtain such a license or that it will be impossible for it so to do. True, the petition alleges that the Hauserman Company has brought a suit in the United States District Court for the Northern District of Ohio to enjoin such claimed infringement by the United States Metal Products Company. Is the court to assume that the Hauserman Company will be successful in said litigation? May not the court assume that the United Metal Products Company, if it finds it necessary to do so, will obtain a license as have the Globe-Wernicke Company and the United Supplies Company?

Now the plaintiff here brings this suit as a taxpayer, claiming that the successful bidder will infringe the patents held by the Hauserman Company, and the prayer is for an injunction. Certainly the rights of the taxpayer to an injunction could not rise higher than the rights of the Hauserman Company to an injunction against infringement in a patent case brought by it, and it is stated in 48 C. J., at page 373, that:

"The facts that complainant owns a patent and defendant infringes it will not alone justify a preliminary injunction; before an injunction will be granted, the validity of the patent must be made to appear so clearly, plainly and convincingly that there is no doubt thereof. Where the validity of the patent has neither been adjudicated nor acquiesced in by the public, a preliminary injunction will ordinarily be refused; but it may be granted where the validity of the patent is clear, or is not questioned or assailed by any evidence, or defendant is estopped

to deny it, or has intentionally infringed or, since the termination of a license, has been marking the articles sold by him as made under the patent.

"Presumption. of validity of patent arising from its issuance is not alone sufficient to warrant the granting of a preliminary injunction, unless no prior patent or publication, and no statement as to the prior state of the art is submitted; but the presumption may be so strongly buttressed on the initial showing that it would be an injustice to refuse an injunction."

In 267 Fed., 367, the statement was made that the "Court is slow or reluctant to grant a preliminary injunction against infringement of a patent which is new and unadjudicated."

Other interesting questions arise in this case. The plaintiff concedes "that the Commission is not liable for damages after an infringement, *Fireproofing Co.* v. *Toole,* 122 F., 649." In that case the syllabus is as follows:

"The members of the State Capitol Commission, who, acting in their official capacity and pursuant to law, let a contract for the construction of a capitol building, in which the use of a patent invention was specified, cannot be held liable for infringement of the patent because of the use of such invention by the contractor without a license or authority from the owner of the patent."

The brief of the plaintiff insists, however, that other cases indicate that the individual commissioners are liable. It is difficult to see how the taxpayer could constitute himself as a sort of protective agent for the individual commissioners, as distinguished from the commission in their public capacity.

As heretofore stated, infringement of a patent is a tort or trespass for which the party injured has recourse against whoever infringes his legal patent, but we know of no authority that holds that the use of the patented article is an "illegal official act." Even if it is to be so held, it could not be so held without a determination of the question as to whether or not there is an infringement.

Moreover, it appears that Article X of the general conditions of the contract provides that:

"The contractor shall pay all royalties and license fees, shall defend all suits or claims for infringement of any patent rights and shall save the owner harmless from loss on account thereof, except that the owner shall be responsible for all such loss when a particular process, or the product of a particular manufacturer or manufacturers is specified, but if the contractor has information that the process or articles specified is an infringement of a patent, he shall be responsible for such loss unless he promptly gives such information to the architect or owner."

In the letting of this contract, the particular process or product of a particular manufacturer or manufacturers was not specified, and it does not appear and it is not alleged that the contractor has given any information to the architect or owner that the process or article specified is an infringement of a patent. The obligation of the contractor under said contract being as above stated, the giving of the performance bond is the protection which the law requires for the benefit and protection of the state. The giving of this bond is for the purpose of protecting the state, the state office building commission, and this and all other taxpayers of the state against any loss or damage by reason of any failure of the successful bidder to perform its contract to construct and install said metal partitions in accordance with the plans and specifications therefor.

This is all the obligation that the law requires for the benefit of the state and evidently the General Assembly in enacting said law providing for said bond, believed that a bond so required and so given was adequate protection for the state and likewise adequate protection for the taxpayer who is essentially acting in a representative capacity on behalf of the state and other taxpayers. How then can there be any injury to the state or to a taxpayer of the state?

THE QUESTION ARISING FROM THE SUBMISSION OF THE SAMPLE.

It is claimed that the contract is illegal for the reason that the sample submitted by the successful bidder was

not constructed in certain enumerated respects in accordance with the specifications. It is admitted that none of the samples submitted by any of the bidders could or did comply with all of the specifications covering all parts of the building in which such partitions were to be constructed, and in effect it is admitted that no sample within the limits of reasonable expense could be so constructed as to cover all of the specifications as they applied to the different parts of the building.

In the case of *Herrmann* v. *State*, 11 C. C., page 504, the first syllabus is as follows:

"Where the Board of Administration advertises for bids to pave a street with brick, all bids to be accompanied with samples of the brick proposed to be used, which must be found acceptable by the city engineer, and the sample brick furnished by the lowest bidder is not found acceptable, the board has no power to award the contract to such bidder, at the amount of his bid, on his agreement to use a certain other kind of brick which comes up to the requirements. The next lowest bidder would be entitled to the contract, if the sample brick furnished by him with his bid answered the requirements, and if he was diligent in asserting his claim. But where the bids were opened on August 7, and a petition for mandamus was filed October 25, held, that the delay defeated his right."

In that case, of course, the sample to be submitted was a sample brick, it was not a sample of the assembly of the bricks or the putting together of them in any particular shape or form or manner of construction. It went to the very character of the material to be used. However, in 19 C. C., page 58, in the case of *Many* v. *City of Cleveland*, we find in the second syllabus this statement:

"An advertisement for bids for a public contract—in this case for furnishing electric street lamps—provided that such bids should be accompanied by a sample lamp according to specifications. The lamp presented by a bidder did not strictly comply with the specifications, and it was sought to enjoin the city from entering into a contract with such a bidder on this ground.

"HELD: The lamp accompanying the bid merely advised the city of the interpretation of the specifications by such bidder, and it appearing that the contract proposed to be entered into by the city with such bidder required the latter to furnish lamps in all respects in compliance with the specifications, there. is therefore no ground for enjoining the city from entering into such contract."

It would seem to this court that this latter case is more nearly in point than the Herrmann case, and that the reasoning thereof would be applicable to the situation here. The contract in the instant case requires the successful bidder to construct said partitions in all respects in accordance with the specifications, and because the sample submitted did not do so in certain particulars, we do not believe there is ground for the granting of an injunction, nor that the statements made relative to said sample submitted is sufficient to constitute a cause of action.

For all of the reasons above stated, the demurrer to the petition and the amendment thereto will be sustained, and motion for temporary restraining order will be overruled.

Exceptions.