**JAMES C. WILBORN & SONS, INC., and Tilt Sash Corporation, Plaintiffs-Appellants,**

v.

**BRANDEX TILT SASH, INC., and Western Engineering Trust, Defendants-Appellees.**

**No. 16058.**

United States Court of Appeals Seventh Circuit.

June 28, 1967.

---◆---

John L. Alex, Fred S. Lockwood, Edward C. Threedy, Lewis W. Schlifkin, Chicago, Ill., for appellants.

Thomas F. McWilliams, Dennis B. Haase, Chicago, Ill., for Western Engineering Trust.

William A. Marshall, J. Stirling Mortimer, Chicago, Ill., for Brandex Tilt Sash, Inc.

Before SCHNACKENBERG, KNOCH, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiffs, James C. Wilborn & Sons, Inc. and Tilt Sash Corporation, Illinois corporations, appeal from an order of the district court dismissing for lack of jurisdiction a second amended complaint filed by them against Brandex Tilt Sash, Inc. (Brandex), an Illinois corporation, and Western Engineering Trust, a trust organized under Illinois law. The sole question is whether the complaint states a claim arising under the patent laws, within the meaning of 28 U.S.C. § 1338.[1]

The complaint contains three counts. In Count I, Tilt Sash alleges that it is a licensee of eight patents relating to window structures, the Nardulli patents,[2] under an exclusive license granted to it by Western Engineering Trust,[3] the owner of the patents. An agreement of October 31, 1956 between Western Engineering Trust and Tilt Sash, then known as the Dodge Window Company, is alleged as the basis of the exclusive license. The complaint alleges that the agreement "has either been lost, misplaced or stolen from the files of" Tilt Sash. In support of the allegation that an exclusive license exists, several documents containing references to an agreement dated October 1, 1956 are attached to the complaint.[4] Count I alleges that on September 17, 1959 Wilborn became the exclusive sublicensee of Tilt Sash in various parts of Illinois and Indiana. It charges Brandex with infringement of the Nardulli patents in the territory described through the manufacture and sale of win-

1. 28 U.S.C. § 1338 reads:

 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

 (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws.

2. The patents, granted to Michael J. Nardulli, and their dates of issuance are:

| Number | Issued |
| --- | --- |
| 2,666,508 | January 19, 1954 |
| 2,799,060 | January 16, 1957 |
| 2,816,632 | December 17, 1957 |
| 2,828,513 | April 1, 1958 |
| 2,828,514 | April 1, 1958 |
| 2,841,835 | July 8, 1958 |
| 2,871,522 | February 3, 1959 |
| 2,874,421 | February 24, 1959 |

3. Michael J. Nardulli, Peter F. Nardulli, and Angelo F. Naples are named as the trustees of Western Engineering Trust.

4. Two of the exhibits attached to the complaint are copies of minutes of meetings of the board of directors of the Dodge Window Company, dated November 1, 1956 and May 10, 1958, which refer to an exclusive license agreement with Western Engineering Trust, dated October 31, 1956. According to these exhibits, Michael J. Nardulli and Angelo F. Naples, trustees of the Western Engineering Trust, were two of the directors of Dodge Window who were present at these meetings and signed the minutes. Another exhibit, a letter to Dodge Window signed by the trustees of Western Engineering Trust, dated October 6, 1958, refers to a "license agreement dated 10–31–56." A fourth exhibit, a letter to Tilt Sash signed by the trustees of Western Engineering Trust, dated February 7, 1959, also refers to a "license agreement dated 10–31–56."

dow structures embodying the inventions disclosed in the patents. Western Engineering Trust is named as a defendant by reason of its refusal to join in the suit against Brandex.

In Count II, Tilt Sash and Wilborn charge Brandex with unfair competition in the use of the "Tilt Sash" trademark in connection with the sale of window structures. Jurisdiction is based upon 28 U.S.C. § 1338(b), which permits unfair competition claims to be heard in federal courts when they are joined with substantial and related claims under the patent laws.[5]

In Count III, the plaintiffs allege that in violation of its exclusive license agreement with Tilt Sash, Western Engineering Trust granted a license under the Nardulli patents to T. W. Sommer Company in December 1963, and that Sommer in turn granted a sublicense to Brandex in January 1964. Count III charges Western Engineering Trust with active inducement of infringement of its own patents.

The plaintiffs seek damages and an accounting of profits for past infringement and inducement of infringement and request injunctive relief against future infringement and inducement of infringement.

The defendants did not file an answer to the plaintiffs' second amended complaint. Instead, they moved to dismiss the complaint for want of jurisdiction over the subject matter on the ground that the only real issue raised by the complaint concerned the validity and scope of the license agreements among the various parties. The defendants contended that such a dispute did not arise under the patent laws, within the meaning of 28 U.S.C. § 1338(a). In support of their motion to dismiss, the defendants referred to an action for unfair competition commenced in a state court by Wil-

born against Brandex and others.[6] In the course of that action, the judge adopted a finding by a master in chancery that Wilborn had only a nonexclusive license under the Nardulli patents because Western Engineering Trust had granted only a nonexclusive license to Tilt Sash, from whom Wilborn's sublicense derived. In the district court the defendants argued that the plaintiffs were merely attempting to relitigate the issue of the exclusivity of Tilt Sash's license from Western Engineering Trust, that no issue of validity or infringement of the Nardulli patents existed, and that therefore the district court had no jurisdiction to entertain this suit.

The district judge granted the defendants' motion to dismiss. He first indicated that although the doctrine of collateral estoppel would bar Wilborn from relitigating against Brandex the issue of the scope of Wilborn's license from Tilt Sash, it could not preclude Wilborn from proceeding against Western Engineering Trust or preclude Tilt Sash from proceeding against either defendant because Western Engineering Trust and Tilt Sash were not parties to the state court action. He then stated, however, that the state court judgment was a factor in his decision to dismiss the complaint for lack of jurisdiction because it provided an insight as to "the nature of the instant action." The district judge recognized that a close question was presented, but he declared that because of the state court decision this case should be viewed as an attempt to obtain affirmative relief establishing contract rights under the Nardulli patents as a basis for further relief under the patent laws, analogous to the situation in Laning v. National Ribbon & Carbon Paper Mfg. Co., 125 F.2d 565 (7th Cir. 1942), and that therefore "the action is not one arising under the patent laws."

---

5. The district court's dismissal of Count II was based solely upon its holding of lack of jurisdiction as to Counts I and III. For that reason, Count II does not require further consideration.

6. James C. Wilborn & Sons v. Heniff, 64 CH 2248, Circuit Court of Cook County, Illinois (February 4, 1966). Counsel have informed us that an appeal from this decision is pending in the Illinois Appellate Court.

■ In our view this case is controlled by the decision of the Supreme Court in Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902), and the judgment of the district court must be reversed. The principal question in *Excelsior* was whether the suit arose under the patent laws. The plaintiff's bill of complaint alleged that the patentee issued an exclusive license under a patent to the Excelsior Redwood Company, which transferred the exclusive license to the plaintiff, Excelsior Wooden Pipe Company. The complaint further alleged that in violation of the plaintiff's rights under the exclusive license, the patentee granted another license to the Pacific Bridge Company. The plaintiff charged the patentee and Pacific Bridge with infringement, requesting damages and injunctive relief against further infringement. In their answer the defendants admitted the validity of the patent, the issuance of an exclusive license to Excelsior Redwood, the granting of a license to Pacific Bridge, and the acts charged as infringement. The only defense asserted was that the exclusive license was no longer in effect, having been abandoned by the plaintiff and subsequently revoked by the patentee for cause under the terms of the agreement. In short, the only issue raised was whether the exclusive license was in existence. The Supreme Court nevertheless held that the suit arose under the patent laws and was therefore within the jurisdiction of the federal courts. The Court first observed the difficulty with which the exclusive licensee would be faced were similar allegations made in a state court, noting that such a suit "would either be inadequate or would involve questions un-der the patent law." Id. at 290, 22 S.Ct. at 684.[7] The Court then stated:

> The natural and practically the only remedy, as it seems to us, was for the plaintiff to assert his title under the license, and to prosecute the defendants as infringers. In doing this he does what every plaintiff is bound to do; namely, set forth his title either as patentee, assignee or licensee, and thereby puts that title in issue. The defendant is at liberty in such a case to deny the title of the plaintiff by declaring that the license no longer exists, but in our opinion this does not make it a suit upon the license or contract, but it still remains a suit for the infringement of a patent, the only question being as to the validity of plaintiff's title. Id. at 291, 22 S.Ct. at 684.

Thus, if the allegations of a complaint and the relief requested state a claim for patent infringement, the suit is one arising under the patent laws, and the jurisdiction of the district court is not defeated even though the defendant raises no issue other than the plaintiff's contract rights under the patent.

■ In the instant case the plaintiffs have put in issue their title to the Nardulli patents, the validity of the patents, and the infringement of them. In support of their rights under the patents they have alleged facts which, if established, entitle them to enforce the patents against the defendants. The case is therefore one arising under the patent laws, notwithstanding the defendants' assertion that the existence or nonexistence of an exclusive license under the patents is the only contested issue. "[T]he plaintiff is absolute master of what jurisdic-

7. With respect to the obstacles presented by litigation in the state courts, the Court explained: "If the licensee sued at law he would be obliged to establish the fact that the patent had been infringed, which the patentee might have denied and in any case could only recover damages for past infringements. If he sued in equity he could only pray an injunction against future infringements; but this is exactly what he prays in this case, and thereby raises a question under the patent laws. In either case the patentee could defeat the action by showing that he did not infringe,—in either case the defendant could so frame his answer as to put in issue the title, the validity or the infringement of the patent." Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U.S. 282, 290–291, 22 S.Ct. 681, 684, 46 L.Ed. 910 (1902).

tion he will appeal to; and if he goes to the district court for infringement of a patent, unless the claim is frivolous or a pretence, the district court will have jurisdiction on that ground, even though the course of the subsequent pleadings reveals other more serious disputes." Healy v. Sea Gull Specialty Co., 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915).

 The decision of the state court which included the factual determination that Western Engineering Trust did not grant an exclusive license to Tilt Sash can have no effect on the jurisdictional question presented. The doctrine of collateral estoppel admittedly could not bar Wilborn's complaint against Western Engineering Trust or Tilt Sash's complaint against either defendant; collateral estoppel was not formally raised in the motion to dismiss for want of jurisdiction, nor is such a defense appropriate to a question of jurisdiction over the subject matter. Granting that the state court action indicates that the overriding issue in the instant case may be one of contract, the state court case cannot thereby defeat the jurisdiction of the district court any more than can a defendant who challenges the plaintiff's title to a patent in his response to the allegations of a complaint.

The principle stated in Excelsior Wooden Pipe Co. v. Pacific Bridge Co., supra, has been consistently reaffirmed, e. g., Luckett v. Delpark, Inc., 270 U.S. 496, 506, 510, 46 S.Ct. 397, 70 L.Ed. 703 (1926), and the decision has been followed in several cases involving similar facts. McKnight v. Akins, 192 F.2d 674 (6th Cir. 1951); Rubens v. Bowers, 136 F.2d 887 (9th Cir. 1943); Automotive Prod. Corp. v. Wolverine Bumper & Specialty Co., 15 F.2d 745 (6th Cir. 1926), cert. denied, 275 U.S. 565, 48 S.

Ct. 122, 72 L.Ed. 429 (1927). In the *Automotive Products* case the court noted, appropriately, that "[w]here the federal jurisdiction conferred by the original bill is extended to an ancillary controversy not originally there cognizable, it is not controlling that the collateral dispute turns out to be more important and takes the center of the stage." 15 F.2d at 747.

Our decision in this case is not inconsistent with Laning v. National Ribbon & Carbon Paper Mfg. Co., 125 F.2d 565 (7th Cir. 1942), in which we held that the district court had no jurisdiction because the plaintiff's complaint sought an affirmative declaration of his title to certain patents as a basis for further relief under the patent laws. In that case, again, "jurisdiction * * * depend[ed] upon the case made and relief demanded by the plaintiff". Healy v. Sea Gull Specialty Co., supra 237 U.S. at 480, 35 S.Ct. at 659. We recognized, in *Laning,* the principle applicable here, stating:

If the plaintiff bases his action broadly on his rights under the patent laws and alleges infringement of those rights, the case is one arising under the patent laws and the federal courts have jurisdiction therein. Although the answer raises an issue foreign to the patent laws, for example, the existence or nonexistence of a contract, or if the plaintiff in his complaint anticipates such a defense—even if subsequent pleadings show that the sole question to be determined is a matter of general law as opposed to patent law—yet the action is one arising under the patent laws. Id. 125 F.2d at 566.

The judgment of the district court dismissing Counts I, II, and III of the plaintiffs' complaint is reversed.